HEPHNER and another, Respondents, vs. WOLF and another, Appellants.

*February 7—March 4, 1952.*

For the appellants there was a brief by *Bradford, Derber & Gabert* of Appleton, and oral argument by *Alfred S. Bradford*.

For the respondents there was a brief by *Benton, Bosser, Becker, Parnell & Fulton* of Appleton, and oral argument by *David L. Fulton*.

FRITZ, C. J.  On the trial there was evidence to the following effect. As Wolf was driving north on Highway 57 at 1:45 a. m. on March 19, 1948, he noticed that one front tire was flat. The traveled part of the highway consisted of an eighteen-feet-wide strip of concrete with a two-feet-wide strip of black-top on each side. Wolf drove as far as possible onto the east shoulder and stopped, leaving about four feet of his car on the east paved portion of the highway. It had been raining and the shoulders were a morass of mud, and there was a misting rain falling and visibility was somewhat impaired. When Wolf got out of his car he saw that the left front tire was flat and the left rear tire was deflating. He got back into his car and flickered his lights when he saw an automobile approaching from the south and passing him. A few minutes later a northbound truck of the defendant Olson Transportation Company stopped on the pavement behind the Wolf car, which was parked with its right wheels as far over on the shoulder as it could go without going into the ditch. The left front side of Wolf's car was about fourteen and one-half feet from the west edge of the concrete, which with the two-feet-wide strip of black-top, made it sixteen and one-half feet from the west edge of the pavement; and the left rear side of his car was fifteen and one-half feet from the west edge of the pavement.

Wolf's car was parked about three hundred fifty feet south of the crest of a long hill, and visibility in front of his car was at least three hundred fifty feet, and about fifteen hundred feet from the rear of his car. On the east side of the

highway there was a driveway leading to a farmhouse, but this driveway was not visible from the highway unless one knew it was there. Further to the north there was a farmer's driveway on the west side of the road, and Police Officer Thompson who was familiar with the place of the accident testified: "There is a possibility that a person at the scene of the accident could have seen that driveway." Plaintiffs contend that the officer's testimony as to the position of the vehicles after the collision admitted finding that the rear of Wolf's car was some one hundred twenty to one hundred thirty feet away from the farm driveway on the east when it stopped in the position in which it was immediately prior to the accident. Wolf testified he did not make any effort to look up the road to see whether there were any driveways that he could pull into. He thinks he could have seen the driveway if he had been looking for it, and if he had known there was one there he would have gone into it. His car could have been driven further ahead so far as the mechanics thereof were concerned; and the flatness of the two tires would not have prohibited his proceeding a few hundred feet or even three blocks.

It is undisputed that the night was dark and rainy and that all drivers who testified on the subject were operating their lights on low beam in order to obtain better visibility through the fog; and that visibility was one hundred fifty to two hundred feet. The driver of the Olson truck, which approached from the south, testified he had no difficulty in seeing the Wolf car a thousand feet or more away; that he brought his truck to a standstill with all four wheels on the pavement behind the Wolf car; that the truck was well lighted both front and back; that the reason he stopped there instead of proceeding up to the crest of the hill was that he did not wish to pass the Wolf car until a car which was approaching from the north, the glow of whose headlights was visible behind the crest of the hill, had passed;

that while the Olson truck was so parked, within two or three minutes after it had come to a stop, Hephner's car came over the crest of a hill from the south; and that although Hephner, Jr., had the same vision which the truck driver had and which was now reinforced by the extra lights on the Olson truck, he drove his car in such a negligent manner that he crashed into the rear end of Olson's truck and thereby sustained his personal injury and the other damages complained of.

On the adverse examination of Hephner, Jr., before the trial, he testified that when he was two hundred to three hundred feet away from Olson's truck he first noticed it and that he did nothing about it until he got within fifty to seventy-five feet of it; that with his lights on low beam he had a vision of objects ahead of about one hundred twenty-five feet and was proceeding at a speed of thirty-five to forty miles per hour when he first saw the Olson truck about one hundred to one hundred twenty-five feet away and assumed that it was moving, and that he kept coming right on and knew he was approaching it all the time; that when he was some fifty to seventy-five feet from the truck he took his foot off the accelerator, pushed in the clutch, and put his foot lightly on the brake under the assumption that the truck was a moving vehicle; that when he reached a point about forty to fifty feet to the rear it appeared to him for the first time that the truck was stopped; that he did not try to turn out until the last second when he was behind the truck; and that there was ample room on the left side of the truck for him to pass.

Hephner, Jr., testified also that he did not initially intend to pass the Olson truck until it passed the crest of the hill three hundred fifty feet to the north; and that if he had not seen the lights of an oncoming southbound car, he could have passed to the left. But the driver of the Olson truck testified that the oncoming southbound car—on account of which he

had stopped behind Wolf's car—reached him almost at the moment of the impact between Hephner's car and the rear of the Olson truck. Officer Kosmosky testified that Hephner, Jr., told him that he was traveling at about fifty-five miles per hour and first saw the lights of the Olson truck when he was about one thousand feet away and at first thought it was moving; and when he got close he saw the truck was parked, and turning his car to the left to pass the truck, he collided with the left rear end of the truck.

The trial court directed a verdict in favor of the Olson Transportation Company because there was no evidence from which a jury could find that the truck driver was negligent in any way; and there is no appeal from the adjudication to that effect.

In a special verdict, the jury found: That at the time of the collision between Hephner's automobile and the Olson truck, the defendant Wolf was causally negligent in respect to parking his vehicle in the manner in which he did; that immediately preceding the collision between Hephner's car and the Olson truck, Hephner, Jr., was causally negligent as to (1) his lookout, and (2) his management and control of the car; that seventy-five and one-half per cent of the causal negligence was attributable to Wolf; and twenty-four and one-half per cent was attributable to Hephner, Jr.

Upon these findings in the verdict the court ordered judgment against Wolf and his automobile liability insurer for the recovery by each plaintiff of seventy-five and one-half per cent of the amount of damages assessed by the jury. Upon our review of the evidence it is our conclusion that there cannot be sustained the jury's finding that Wolf's causal negligence in respect to parking his car was greater than the percentage of Hephner's causal negligence in respect to his lookout and to his management and control of his car. The only respect in which the jury found Wolf causally negligent was as to the manner in which he parked his car on the east

shoulder of the highway, with his right wheels as far on the east shoulder as his car could go without getting into a ditch; and with about four feet of the left side of his car on the paved portion of the highway, which consisted of an eighteen-feet-wide strip of concrete with strips of black-top, two feet wide, on each side. Consequently, there were still at least fifteen feet of pavement available for north and southbound traffic.

On the other hand, the evidence warranted the jury's findings that Hephner was causally negligent in respect to his lookout and in respect to his management and control of the car. Because of his negligent lookout he failed to see not only Wolf's lights but also the extra lights on the Olson truck, which was well lighted in front and back. As the evidence fully warranted the jury's finding that Hephner was causally negligent in both of those respects, Hephner's negligence was clearly greater than Wolf's negligence in parking his car, the sole respect stated above. Consequently, it is within the power and duty of this court to so hold, and, therefore, dismiss the complaint. *Quady v. Sickl,* 260 Wis. 348, 51 N. W. (2d) 3.

*By the Court.*—Judgment reversed with directions to dismiss the plaintiffs' complaint.