Vidakovic, Respondent, vs. Campbell and another, Appellants.*

*November 5—December 4, 1956.*

* Motion for rehearing denied, with $25 costs, on February 5, 1957.

For the appellants there was a brief and oral argument by *Vilas H. Whaley* of Racine.

For the respondent there was a brief by *Lepp & Phillips* of Kenosha, and oral argument by *David L. Phillips* and *Burton Lepp.*

CURRIE, J.   The defendants raise the following contentions on this appeal:

(1) There is no credible evidence to support the finding of causal negligence against the defendant Campbell with respect to his stopping on the highway.

(2) The plaintiff Vidakovic was guilty of causal negligence as to speed as a matter of law.

(3) If Campbell were negligent, the negligence of Vidakovic was at least equal to that of Campbell as a matter of law.

(4) A new trial should be directed because of alleged error in the instructions.

In passing on the issue of whether there is any credible evidence to substantiate the jury's finding of causal negligence as to Campbell's stopping on the highway, it is only necessary for this court to consider such testimony and other evidence which supports the finding. *Heibel v. Voth* (1955), 271 Wis. 350, 353, 73 N. W. (2d) 421, and *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 109, 62 N. W. (2d) 549, 63 N. W. (2d) 740.

At the time of the accident Campbell was seventy-seven or seventy-eight years old.  He resided in a home located on

the south side of Highway 50. About eight o'clock in the evening he left his home and drove three miles in his 1936 Buick automobile to a tavern where he remained approximately an hour to watch some boxing matches on television. While at this tavern he drank three eight or ten-ounce glasses of beer. From such tavern he proceeded to another near-by tavern to contact a party about doing some sewer work. Here Campbell was told that a telephone message had been received that his sister had arrived from Detroit for a visit and was now at a neighbor's. Upon receiving such message Campbell started for home.

It was a dark, rainy night and, to reach home, Campbell drove easterly on Highway 50 which has a concrete pavement covered with black-top 22 feet in width. A private driveway eight to nine feet wide, having an apron about 24 feet wide at its mouth next to the highway, extended at right angles southerly into Campbell's premises. The center of such driveway is 381 feet east of the intersection of County Trunk Highway D and Highway 50, and 237 feet west of the crest of the incline or hill which extends easterly upgrade from such intersection past this private driveway. When Campbell arrived at such intersection with County Trunk Highway D he shifted into second gear, depressed his clutch pedal, coasted toward his own driveway, and then applied his brakes so as to come to a complete stop. When so stopped, the front end of the car was about even with the center of the driveway with about a foot and a half of the vehicle off the south edge of the pavement and its remaining portion on the pavement.

Campbell testified that it was his usual custom to bring his car to a stop before attempting to turn into his driveway because there was a steep bank at the east edge and a ditch at the west edge of the driveway. However, he admitted that if he proceeded slowly he could make the turn into the driveway without stopping. As he arrived opposite his drive-

way, Campbell noticed an automobile come over the crest of the hill to the east which had bright lighted headlights. These lights blinded him and prevented him from making the necessary observation to enable him to safely make the turn into his driveway. As he waited for such approaching car to pass, another car proceeding westerly came over the crest following the first car at a distance of about 240 feet. Such second car also had blinding headlights and Campbell waited for it also to pass. While so waiting for this second car to pass, Campbell's car was struck in the rear by the automobile of the plaintiff Vidakovic which was proceeding easterly in the southerly half of the paved roadway of Highway 50. Campbell estimated the length of the period from the time of first stopping his automobile until the impact of the collision as being several seconds.

In considering the question of whether there is any credible evidence which sustains the jury's finding that Campbell was causally negligent in stopping his car where he did, the following provision of sec. 85.19 (1), Stats., is pertinent:

"No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop, or leave such vehicle standing off the roadway of such highway. . . ."

From the foregoing summary of the evidence, the jury had the right to infer that Campbell had stopped his car in front of his driveway before he was blinded by the headlights of the first of the two vehicles approaching from the east. Therefore, the jury would have been entirely justified in concluding that Campbell, by the exercise of ordinary care, could have turned into his driveway without stopping and before he was blinded by any headlights. This being so, it is our conclusion that the finding of causal negligence on the part of Campbell is sustained by credible evidence.

We next turn to the issue of whether Vidakovic was negligent as to speed as a matter of law. Vidakovic was thirty-eight years of age at the time of the accident and had lost the sight of one eye in a hunting accident. He was operating his Hudson automobile in an easterly direction on Highway 50 accompanied by one Holt with whom he had spent the day fishing at Delavan lake. As he approached the Campbell driveway he observed the two cars coming from the opposite direction. The first car dimmed its headlights but the second car did not, and the bright light therefrom blinded Vidakovic. He then applied his brakes lightly and turned slightly to the right but not enough to get off the pavement. Prior to so applying the brakes he had been traveling at a speed of 40 to 50 miles per hour. The reason for not applying his brakes harder was that the pavement was wet and slippery and he was afraid of skidding if he had done so. He did not observe the Campbell car until he was but 50 to 75 feet from it, and then he immediately "slammed on" his brakes hard but was unable to avoid the impending collision. Holt estimated the speed at the time of impact at 30 miles per hour. At one point in Vidakovic's testimony he stated that the approaching automobile with the blinding headlights was 10 to 15 feet east of the Campbell car when Vidakovic first saw the latter. At another time he testified that such approaching car was 10 or 15 feet east of the Campbell automobile at the time of impact.

A reasonable inference would appear to be that the jury, by finding Vidakovic causally negligent with respect to failing to keep a proper lookout but not as to speed, concluded that his reduced speed after first applying his brakes was sufficient to have enabled him to stop his car before striking the Campbell vehicle if he had maintained a proper lookout. This hypothesis is strengthened by the fact that Holt saw the Campbell car before Vidakovic.

Defendants' counsel strongly relies upon the cases of *Cook v. Wisconsin Telephone Co.* (1953), 263 Wis. 56, 56 N. W. (2d) 494, and *Guderyon v. Wisconsin Telephone Co.* (1942), 240 Wis. 215, 2 N. W. (2d) 242. In both of these cases the vision of a motor-vehicle operator was obscured by smoke, and the rule was laid down that it is the duty of such a driver to stop his vehicle if that is the only effective way of avoiding a collision. The feature which distinguishes those two cases from the instant one is that the drivers were absolved from any negligence as to lookout, while in the instant case Vidakovic was found negligent as to lookout. It does not follow that a driver in the position of Vidakovic, whose vision is obscured by blinding headlights or other cause such as smoke, and whose vehicle then collides with some object, must be deemed negligent as a matter of law as to both lookout and speed.

The case at bar is readily distinguishable from *Quady v. Sickl* (1952), 260 Wis. 348, 51 N. W. (2d) 3, 52 N. W. (2d) 134, where a driver, who was blinded by the headlights of an approaching vehicle, proceeded ahead at a speed of 50 miles per hour. Here Vidakovic did take steps to reduce his speed as soon as his vision was obscured.

It is our conclusion that in view of the facts of this case, and especially the finding of causal negligence as to Vidakovic's lookout, the question of his speed lay within the province of the jury to determine.

The third point urged by the defendants is that the negligence of Vidakovic is, as a matter of law, at least equal to that of Campbell. The authorities cited in such contention are *Quady v. Sickl, supra,* and *Hephner v. Wolf* (1952), 261 Wis. 191, 52 N. W. (2d) 390. We attempted to make it clear in the later cases of *Schroeder v. Kuntz* (1953), 263 Wis. 590, 58 N. W. (2d) 445, and *Jennings v. Mueller Transportation Co.* (1955), 268 Wis. 622, 68 N. W. (2d) 565, that this court is not committed to the principle that the

negligence of an operator of a motor vehicle who at night collides with a vehicle stopped on the paved portion of a highway is, as a matter of law, at least equal to that of the driver of the stopped vehicle. Each case of this kind must be decided upon its own facts, and in the vast majority of such cases the comparison of negligence is for the jury and not the court to determine.

There is no extraordinarily negligent conduct on the part of Vidakovic such as was present in the *Quady* and *Hephner Cases*. We have above alluded to the high degree of negligence of the driver in the *Quady Case* whose car collided with the stopped vehicle. In the *Hephner Case,* Hephner's car collided with a stopped truck which he testified he saw when he was 200 to 300 feet away from it and yet did nothing to avoid a collision until he had arrived to within 50 to 75 feet of it.

We have no hesitancy in holding that the comparison of negligence in the case at bar presented solely a jury issue.

We now turn to the last contention advanced by the defendants, viz., that they are entitled to a new trial because of error in the trial court's instructions to the jury. The instruction complained of was given with respect to the question of the verdict which inquired as to whether Vidakovic was negligent as to the speed at which he operated his automobile, and read as follows:

"However, you are also instructed if the situation on a highway is such that a driver's vision is completely obscured, it is his duty to slow down or even stop until the cause of such obscured vision is at least in part removed, *provided there is time and distance in which in the exercise of ordinary care to accomplish such stop before the vehicle comes into collision with some object on the highway which is completely obscured from the vision of the driver."* (Emphasis supplied.)

Defendants urge that the above-italicized proviso in such instruction constituted error.

A separate causation question was inserted in the verdict in addition to the question inquiring as to whether Vidakovic was negligent, which negligence question was subdivided as to speed and place of stopping on the highway. The italicized proviso of the quoted instruction has to do with causation rather than negligence and should not have been included in the instruction which was given with respect to the negligence question. However, it would have been proper for the trial court to have included the substance of such italicized proviso in an instruction relating to the causation question.

We are, therefore, of the opinion that the instruction, while erroneous, was not prejudicial. This is because if the jury were of the opinion that there was insufficient time for Vidakovic to have stopped his car so as to avoid a collision with the Campbell automobile, when his vision first became obscured, it would have had to have determined that any negligent speed on the part of Vidakovic was not causal. There is no claim made that Vidakovic's speed, prior to the time his vision became obscured, was excessive.

*By the Court.*—Judgment affirmed.

FAIRCHILD, C. J., and MARTIN, J., dissent as to the apportionment of negligence.