ERNST, by Guardian *ad litem*, and another, Respondents, v. GREENWALD and another, Appellants.*

*June 8—June 30, 1967.*

* Motion for rehearing denied, with costs, on September 11, 1967.

766

For the appellants there was a brief by *Foley, Capwell & Foley* of Racine, and oral argument by *Rex Capwell.*

For the respondents there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil*.

HEFFERNAN, J.

*Was a letter from an employee of the state highway commission to plaintiff's attorney, stating that flashing signals were used at the time of the accident, properly admitted in evidence?*

The plaintiff called as a witness Gordon Mueller, an accident traffic engineer employed by the state highway commission. He identified plaintiff's Exhibit 2 as a letter from the plaintiff's counsel to the state highway commission requesting information in regard to how the traffic signals were being operated at the intersection at the time of the accident. He also identified plaintiff's Exhibit 1, the commission's reply to the inquiry of the plaintiff's attorney. Both of these letters were received into evidence over the objection of defendant's counsel on the basis that they were irrelevant and immaterial and were not the best evidence. Plaintiff's Exhibit 1, commission's reply, stated:

"The time clock on the signal controller was set to place the signals on flashing operation at 10:00 P. M. each evening. On September 6, 1964 at 11:35 P. M. [the time of the accident], the signals should have been flashing a red indication on S. T. H. 43 and an amber indication on S. T. H. 31."

Despite the statement of defendant's counsel made in chambers on the record that the proffered exhibit was in error and that the highway commission had, by letter, retracted the information set forth in plaintiff's Exhibit 1 and counsel for defendant's renewed objection that the letter was not the best evidence, the exhibits were nevertheless received. These exhibits tended to prove that the

plaintiff, who was proceeding on Highway 31, was confronted with only an amber warning blinker, while the defendant, who was proceeding on Highway 43, was confronted with a red blinker. After the exhibits were received, the defendant's attorney attempted to cross-examine the witness in regard to the records themselves, but the trial judge sustained the plaintiff's objection that such an inquiry was beyond the scope of direct examination. Subsequently, however, when the defendant presented his case, he called a Mr. White, the district traffic engineer, who identified the plaintiff's exhibits but stated that the information contained in plaintiff's Exhibit 1 was in error. The district traffic engineer testified that a letter was then sent to the plaintiff's attorney stating:

"Upon further scrutiny of our files, we find that the latest service report indicating work on the time clock was submitted on August 30, 1961. At that time, the clock was set to flash the signal from midnight to 6:00 A. M.

"Between August 30, 1961, and September 6, 1964, there is no report indicating a change in operation of the time clock. From this, we can only assume that our letter of October 31 gave you erroneous information. We are sorry if this has caused you any inconvenience."

White then proceeded to testify that he had with him the original service records pertaining to the light sequence of the traffic controls at the intersection and, from those records, he testified that the traffic signals at the time of the accident were programmed to operate in a green, amber, and red sequence.

We conclude that the only admissible evidence in regard to the operation of the lights was that given by the defendant's witness in testifying from the official records and which appeared in defendant's Exhibit 2, the state highway commission electrical work order and service report form, which indicated that the flashing lights were installed to operate only from midnight to 6 a. m., and not from 10 p. m., as plaintiff's Exhibit 1 indicated.

The admissibility of the records, as introduced by the defendant, is recognized not only by the case law of the state of Wisconsin but by the statutes. Sec. 889.18, Stats., provides:

"(1) As Evidence. Every official record, report or certificate made by any public officer, pursuant to law, is evidence of the facts which are therein stated and which are required or permitted to be by such officer recorded, reported or certified . . . .

"(2) Copies Of Evidence. A certified copy of any written or printed matter preserved pursuant to law in any public office or with any public officer in this state, or of the United States, is admissible in evidence whenever and wherever the original is admissible, and with like effect."

Jones on Evidence states the policy reason for permitting the use of such records:

"Where a person in public office has been required by statute or by the nature of his office to write down particular transactions occurring in the course of his public duties and under his personal observation, the record is generally held to be admissible in evidence. Such entries are generally made by those who can have no motive to suppress the truth or to fabricate testimony. Moreover, they are made in the discharge of duty, pursuant to an oath of office, and to satisfy the rule against hearsay have the earmarks of inherent trustworthiness." 3 Jones, Evidence (5th ed.), p. 1057, sec. 544.

The same rule and rationale are recognized in 30 Am. Jur. (2d), Evidence, p. 128, sec. 999, and 32 C. J. S., Evidence, p. 793, sec. 626. The latter citation states:

"Public records and documents are ordinarily admissible in evidence. As a general rule, where some enactment or rule of law requires or authorizes a public official to make a certificate or written statement as to some matter or fact pertaining to and as a part of his official duty, such writing is competent evidence of the matter of fact therein recited. The general rules governing the relevancy, competency, . . . apply . . . ."

It is thus apparent that, both under the recognized common-law rules and the statutes of the state of Wisconsin, defendant's Exhibit 2, the report form, was properly admitted into evidence. However, plaintiff's Exhibit 1, the letter of an employee of the highway commission, does not come within the exceptions permitted by the statutes or by the case law. Neither an official record nor a certified copy was submitted. Rather, this evidence was submitted by a letter from a highway commission employee to the plaintiff's attorney. The applicable rule of evidence is not satisfied thereby. Moreover, the evidence offered by the plaintiff in this respect runs afoul of the best-evidence rule. As stated by McCormick, Evidence (hornbook series), p. 409, sec. 196:

"The rule is this: in proving the terms of a writing, where such terms are material, the original writing must be produced, unless it is shown to be unavailable for some reason . . . ."

We conclude that a mere letter from an employee of the department that keeps public records does not constitute admissible evidence of the contents of such records. In this case the soundness of the policy reasons for the best-evidence rule were demonstrated in a striking manner, for the writing, plaintiff's Exhibit 1, inadmissible under the rule, was proved to be in error when the original records were produced.

On oral argument in this court, counsel for the plaintiff contended that, although the evidence presented by him in his Exhibit 1 was erroneous, it was nevertheless admissible to impeach the contrary testimony that was subsequently offered from the official records. While it might have been admissible for that purpose, it was not introduced in such a context during the course of trial, and it is clear that the jury reasonably could have taken the position that the plaintiff's exhibit was introduced for the purpose of showing the truth of the matters asserted therein rather than to impeach an inconsistent

statement of the highway commission representative. We conclude that the introduction into evidence of plaintiff's Exhibit 1 under those circumstances was erroneous and prejudicial to the defendant.

Looking at the admissible evidence only, we conclude that the plaintiff failed to produce any evidence tending to prove that, under the programmed operation of the traffic lights at the time in question, the flashing lights were red for the defendant and amber for the plaintiff.

*Was there sufficient credible evidence
to support the jury verdict?*

The jury found both parties to be causally negligent and apportioned 20 percent to the plaintiff and 80 percent to the defendant. The defendant, the appellant in this court, takes the position that there is no credible evidence to support the verdict. This court takes the position that, when a jury verdict is attacked, it will be sustained if there is any credible evidence under any reasonable view that supports the verdict. This is particularly true when, as here, the jury's verdict has been given the approval of the trial court. *Schwalbach v. Antigo Electric & Gas, Inc.* (1965), 27 Wis. (2d) 651, 135 N. W. (2d) 263; *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. (2d) 286, 128 N. W. (2d) 400. This principle applies to a jury's answers to special-verdict questions in the same manner that it does to a general verdict. *Smith v. Atco Co.* (1959), 6 Wis. (2d) 371, 94 N. W. (2d) 697, 74 A. L. R. (2d) 1095.

The weight of the testimony and the credibility of witnesses are primarily determinations to be made by the finder of fact, in this case the jury; and where more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the one reached by the fact finder. *Hanz Trucking, Inc., v. Harris*

*Brothers Co.* (1965), 29 Wis. (2d) 254, 138 N. W. (2d) 238. The apportionment of negligence is a matter particularly within the province of the jury, and it will not be upset except in unusual cases in which the court can find, as a matter of law, that the plaintiff's negligence equaled or exceeded that of the defendant. *Firkus v. Rombalski* (1964), 25 Wis. (2d) 352, 130 N. W. (2d) 835. We nevertheless have disturbed the jury's determination of negligence when the percentages attributed to the parties are found to be grossly disproportionate. *Brown v. Haertel* (1932), 210 Wis. 345, 244 N. W. 630; *Cameron v. Union Automobile Ins. Co.* (1933), 210 Wis. 659, 246 N. W. 420, 247 N. W. 473; *Zenner v. Chicago, St. P., M. & O. R. Co.* (1935), 219 Wis. 124, 262 N. W. 581; *Gauthier v. Carbonneau* (1938), 226 Wis. 527, 277 N. W. 135.

The plaintiff, however, has the burden of proof; and in the event that there is a failure of proof, as we conclude there exists in this case, the verdict can only be based on speculation and, therefore, is not entitled to the application of the rules set out above. We have stated:

". . . the degree of proof required must be such as will remove the ultimate facts to be found by the jury from the field of speculation and conjecture." *Reichert v. Rex Accessories Co.* (1938), 228 Wis. 425, 439, 279 N. W. 645.

We stated in *Creamery Package Mfg. Co. v. Industrial Comm.* (1933), 211 Wis. 326, 331, 248 N. W. 140:

"It will not do to reach a conclusion in favor of the party on whom the burden of proof rests by merely theorizing and conjecturing. There must at least be sufficient evidence to remove the question from the realm of conjecture."

What then is the evidence presented by the plaintiff that would satisfy his burden of proof? The plaintiff

himself was unable to testify as to the nature of the accident, and the only testimony given by the defendant was that he observed the light to be green at a distance of about 100 feet from the intersection. In his brief, the plaintiff relies on the testimony that, sometime before the accident, the defendant Greenwald was in a teen-age bar. Admittedly, that evidence is probative of the fact that he had drunk some beer and that he had appeared "high" while there and had left the bar in his automobile in a burst of speed with his car tires "spurting rubber." However, this is far short of indicating the manner of his driving at the time the accident occurred, and there is no evidence whatsoever to link his alleged drinking at the Thirsty-I bar with the cause of the accident. We have previously said in *McNamer v. American Ins. Co.* (1954), 267 Wis. 494, 66 N. W. (2d) 342, that evidence of somewhat earlier conduct by a defendant is not probative of negligence in a subsequent accident.[1] As stated above, the evidence contained in plaintiff's Exhibit 1, that the light was red for the defendant and which led to the conclusion that the plaintiff had the right-of-way, was not properly in evidence and cannot form the basis of any inference of negligence on the part of the defendant. It should also be noted that the police officer's automobile-accident report stated that the intersection was controlled by automatic signals and not by flashing lights. The only evidence available is that the lights were on automatic operation and were green in favor of the defendant Greenwald.

The plaintiff makes much in his brief of the fact that the plaintiff suffered a severe concussion and was unconscious for a period of four days. It is also a fact that

[1] " 'The question of Dempsey's intoxication may be of slight importance in this case. The real question is which driver was on the wrong side of the road? . . .'

"We agree that the issue is correctly stated." *McNamer, supra,* page 498.

the plaintiff claims to have no memory of the accident. He therefore asserts that, because of retrograde amnesia, it must be presumed that the plaintiff was proceeding with due care and that, if such a presumption is recognized, even though the intersection were regulated by automatic lights a person exercising due care would not have entered it against a red light. This court takes the position that, where retrograde amnesia is proved, a party so afflicted will be presumed to have exercised due care. *Walter v. Shemon* (1954), 267 Wis. 424, 427, 66 N. W. (2d) 160. It should be noted, however, that the assertion in this case of retrograde amnesia is based solely on the plaintiff's testimony that he was unable to recall the facts of the accident. There was not one whit of medical testimony that the plaintiff had amnesia, that the injury sustained by the plaintiff caused any amnesia, or that, to a reasonable degree of medical probability, such amnesia would be the likely result of the injuries sustained. Although plaintiff's attending physician was questioned exhaustively in regard to the injuries sustained, none of the questions attempted to link the injuries to the amnesia that is now alleged. The trial judge did not instruct the jury that the plaintiff was entitled to the presumption that he was exercising due care because of retrograde amnesia, and it was proper, in the absence of some evidence in that regard, that he not do so. However, even had such evidence existed to give rise to such presumption, and we find that it does not, the presumption is a limited one. We stated in *Atkinson v. Huber* (1955), 268 Wis. 615, 618, 68 N. W. (2d) 447, that:

". . . where, in a negligence case, evidence is introduced which would support a jury finding contrary to the presumption that a deceased person or one who has suffered amnesia exercised due care for his own safety, the presumption is eliminated and drops out of the case

entirely and no instruction upon that subject should be given to the jury."

In *Theisen v. Milwaukee Automobile Mut. Ins. Co.* (1962), 18 Wis. (2d) 91, 100, 118 N. W. (2d) 140, 119 N. W. (2d) 393, we stated:

"This presumption is a limited one, is not evidence, and is sufficient only to place upon the other party the risk incidental to a failure to come forward with such testimony as may be in his control. . . ."

The defendant testified that the light was green, and such testimony was sufficient to rebut the presumption of due care asserted by the plaintiff. In view of the evidence of the records of the state highway commission that at the time of the accident the lights were on automatic operation, we cannot conclude that the testimony of the defendant was so inherently incredible to be insufficient to rebut the presumption of due care asserted by the plaintiff, and as set forth above we conclude that the presumption itself lacked the evidentiary basis necessary to make it an element in this case. The jury's verdict was based upon erroneously admitted evidence and mere conjecture. We conclude the trial court erred in failing to grant the defendant's motions to dismiss the complaint and for a directed verdict.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.