WERNER TRANSPORTATION COMPANY and another, Respondents, v. BARTS and another, Appellants. [Case No. 111.]

RATWIK, Individually and as Special Administratrix, Respondent, v. NATIONAL INDEMNITY COMPANY and others, Appellants.

*Nos. 111, 112. Submitted under sec. (Rule) 251.54 March 1, 1973.—Decided March 27, 1973.*
(Also reported in 205 N. W. 2d 394.)

For the appellants the cause was submitted on the brief of *Lawrence M. Engelhard* and *Engelhard, Snodgrass & Goerdt,* all of La Crosse.

For the respondents in Case No. 111 the cause was submitted on the brief of *Johns, Flaherty, Harman & Gillette* of La Crosse.

For the respondent in Case No. 112 the cause was submitted on the brief of *Vieth & Feldman* of Mauston.

HEFFERNAN, J. The jury's verdict was based upon testimony that indicated that, at the time of the accident, Barts was either stopped on the highway or proceeding at a very low speed, that his headlights were either not burning at all or were extremely dim, and that the taillights were not functioning.

The trial judge instructed that:

"A safety statute provides that no person shall operate a vehicle upon a highway during hours of darkness unless all headlamps, tail lamps, and clearance lamps with which such vehicle is required to be equipped are lighted, and are reasonably clean and in proper working order at all times."

The jury was also instructed in regard to the defendant Arthur W. Barts:

". . . that no person shall drive a motor vehicle at a speed so slow as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation."

In respect to the deceased, Ratwik, the trial judge found that he was negligent as a matter of law. The

judge concluded that the facts indisputably showed that
Ratwik was negligent with respect to lookout. It was
left to the jury, however, to determine whether such
negligence was causal; and in the event that the de-
fendant Barts was found negligent, the jury was in-
structed to make the apportionment between Ratwik
and Barts.

Barts did not testify at the trial, but his deposition
was read into the record. He testified that he had
stopped at New Lisbon, some 17 miles south of the
accident scene, at about 8:30 p. m. He stated that
he had trouble getting his vehicle started and he needed
a booster charge for his battery to get underway. He
said, however, that his equipment was in good shape
and that he checked his tractor and trailer lights and
found them all in operation.

Jack Thompson, Barts' employer, driving another car-
nival truck, testified that he followed Barts, that Barts
was going about 45 miles per hour, and that all of
the lights on the vehicle driven by Barts were func-
tioning. However, he passed Barts prior to the acci-
dent and did not witness it. Barts also testified that he
was traveling about 45 miles per hour when he was
struck by the Ratwik vehicle. Contrary to Barts' testi-
mony, there was substantial evidence to show that,
just prior to the accident, Barts was either stopped on
the highway or traveling at less than 15 miles per hour,
that none of his rear lights were burning, and that
only one headlight, burning dimly, was perceptible. On
the basis of scientific evaluations, an accident recon-
struction expert for the plaintiffs testified that the speed
differential between the two vehicles was between 41
and 55 miles per hour.

There was convincing testimony that Ratwik's truck
was proceeding at less than 55 miles per hour at and
prior to the accident. Norman Burt, another truck

driver, who was proceeding in the same direction as Ratwik and Barts, stated that he was traveling at a speed of 55 miles per hour and was overtaking the Ratwik vehicle when the collision occurred. Moreover, there was testimony by another driver, who had driven Ratwik's vehicle from Chicago on that very day, that the Ratwik tractor was equipped with a governor which limited the unit's top speed to 55 miles per hour.

The evidence also showed that Ratwik's truck traveled only a very short distance following the impact. The expert testimony indicated that the distance the Barts' vehicle traveled following the impact was consistent with the speed of from zero to 15 miles per hour. Gary Peterson, another truck driver, was proceeding north on I–94 when he overtook Barts' truck about five miles south of the scene of the accident. He stated that he did not see the Barts' vehicle until he was just behind it, and pulled over at the last moment, narrowly avoiding a collision. He stated that none of the trailer lights on the rear of Barts' vehicle were on, that no reflectors were perceptible, and that, after he passed, he saw that only one of the tractor's headlights was on and that one was burning dimly.

There was overwhelming evidence to show that the electrical system on the Barts' rig was defective. There was evidence that a nail had been forced between one of the battery posts and the electric cable. Barts acknowledged that, because the battery posts had been corroded, he had inserted the nail to tighten the connection. A mechanic testified that, after the accident, he examined the truck's generator and found that it was completely burned out. He believed the cause of the generator failure was a faulty connection at the battery. Defendant's own expert witness testified that the generator on the Barts' truck had probably burned out before the accident. There was expert testimony

that, with the generator burned out, the Barts' vehicle would have been traveling on battery power alone and that when the battery discharged the spark plugs would misfire and the truck would slow down and eventually stop. After the accident one of the truck drivers on the scene attempted to start the Barts' vehicle but found that the battery was dead and none of the lights was functioning. Upon inspecting the wiring to the trailer lights, he found improper splicing in several places, missing insulation, and sticks and twigs that had been inserted between wires and the frame to keep the electrical system from short-circuiting. While there was testimony that, on the next day, the trailer lights could be turned on, there was expert testimony that a battery in that interval could spontaneously regenerate sufficiently to power the lights.

Under this state of facts, which could have been believed by the jury, the negligence of Barts was proved by overwhelming evidence. While Barts in his deposition gave some testimony to the contrary, his deposition was replete with gross contradictions and some of his statements were so clearly inconsistent with the established facts that the judge felt obliged, and properly so, to sua sponte give the *falsus in uno* instruction to the jury. In the decision on the motion after verdict, the trial judge pointed out that he simply did not believe Barts' testimony. Clearly, there was evidence upon which the jury could find Barts causally negligent.

Additionally, the appellants herein argue that, as a matter of law, Ratwik's negligence was equal to, if not greater than, that of Barts, and they ask for a judgment setting aside the verdict and dismissing the complaint. Alternatively, they argue that the percentages are so grossly disproportionate to the facts underpinning the negligence of the two parties as to warrant a new trial in the interests of justice.

This court has frequently observed that, in the great majority of automobile accident cases, the comparison of negligence is a question for the jury and that only in unusual cases will the apportionment be overturned on appeal. *Smith v. St. Paul Fire & Marine Ins. Co.* (1973), 56 Wis. 2d 752, 755, 203 N. W. 2d 34; *Maus v. Cook* (1961), 15 Wis. 2d 203, 206, 207, 112 N. W. 2d 589; *Niedbalski v. Cuchna* (1961), 13 Wis. 2d 308, 318, 108 N. W. 2d 576. In *Vanderkarr v. Bergsma* (1969), 43 Wis. 2d 556, 563, 168 N. W. 2d 880, this court stated that a party seeking to upset a jury's apportionment of negligence has a difficult burden on appeal and listed the limited circumstances in which such an attack will succeed:

" '(1) If, as a matter of law, the plaintiff's negligence equaled or exceeded that of the defendant; (2) if the percentages attributed to the parties (in light of the facts) are grossly disproportionate; and (3) if there was such a complete failure of proof that the verdict could only be based upon speculation.' "

*See also: Lautenschlager v. Hamburg* (1969), 41 Wis. 2d 623, 627, 628, 165 N. W. 2d 129; *Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 773, 151 N. W. 2d 706.

This court has pointed out that only rarely will it conclude, as a matter of law, that one party's negligence equaled or exceeded the negligence of the other; in most cases the determination is for the jury. *Sailing v. Wallestad* (1966), 32 Wis. 2d 435, 438, 145 N. W. 2d 725; *Smith v. St. Paul Fire & Marine Ins. Co., supra,* at 755; *Baumgarten v. Jones* (1963), 21 Wis. 2d 467, 471, 124 N. W. 2d 609.

Where, as here, the trial court has specifically approved the apportionment of negligence in its ruling on motions after verdict, this court's inquiry is limited to whether there is any credible evidence which under any

reasonable view would support such findings. *Kosnar v. J. C. Penney Co.* (1959), 6 Wis. 2d 238, 240, 94 N. W. 2d 642. This court need only consider the testimony that tends to sustain the verdict. *Seitz v. Seitz* (1967), 35 Wis. 2d 282, 289, 151 N. W. 2d 86; *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 109, 62 N. W. 2d 549, 63 N. W. 2d 740.

The jury could reasonably have concluded that, just prior to the accident, Barts was either stopped or proceeding at a very low speed upon the highway, with none of his rear lights burning. Despite the overwhelming evidence that supports this point of view, it is argued on this appeal that there are reasonable inferences to be drawn from the evidence upon which the jury should have concluded that Barts was free of negligence. None of these argued inferences has any probative force. For example, it is argued that Barts could not have been going only 15 miles per hour, since he had traveled between 20 and 22 miles in the thirty minutes which had elapsed from the time he left New Lisbon to the time of the accident. In the first place, the distances relied upon by the appellants have no support in the evidence. The distance traveled was variously stated by witnesses to be between 15 and 17 miles. Appellants' argument is in any event irrelevant. There is no contention that Barts traveled at 15 miles per hour or less all the way from New Lisbon to the scene of the accident. Rather, the testimony clearly supports the inference that the electrical problems and the subsequent slowdown of the vehicle occurred only during the last few miles of Barts' progress prior to the accident. To sustain the jury's verdict it is only necessary to find from the evidence that he was traveling on the highway at a slow rate of speed at the time the accident occurred. This inference is completely supported by the evidence. The jury's finding that such negligence was causal is beyond question.

Additionally, there was convincing evidence of the absence of taillights. Sec. 347.13, Stats., requires that vehicles operating on the highway during the hours of darkness must be equipped with at least one red taillight which is visible for at least 500 feet to the rear. The violation of this section has uniformly been held to constitute negligence as a matter of law. Under the circumstances of this case, particularly where there was evidence that, due to the absence of the required lights on the Barts vehicle, another truck had narrowly avoided a collision, the jury's verdict that this negligence was causal was eminently reasonable.

Similarly, we have held that sec. 346.59, Stats., which makes it a criminal offense to, ". . . drive a motor vehicle at a speed so slow as to impede the normal and reasonable movement of traffic except when reduced speed is necessary . . . ," is a safety statute which invokes the rule of negligence per se. In *Bentzler v. Braun* (1967), 34 Wis. 2d 362, 149 N. W. 2d 626, where there was a showing that a defendant had been driving too slowly under the circumstances and a nighttime rear-end accident occurred, we held that a jury could properly find that the slow movement of the vehicle upon the highway was causal.

The appellants seem to rely upon a rule of thumb that, as a matter of law, the overtaking and striking vehicle is more negligent than the preceding one. That asserted position has no foundation in the decisions of this court.

This court has declined to hold that the overtaking vehicle necessarily is at least equally negligent as a matter of law. *Pettit v. Olson* (1960), 11 Wis. 2d 185, 191, 105 N. W. 2d 280; *Christenson v. Klitzke* (1958), 2 Wis. 2d 540, 554, 555, 87 N. W. 2d 516; *Schroeder v. Kuntz* (1953), 263 Wis. 590, 58 N. W. 2d 445. *Vidakovic v. Campbell* (1956), 274 Wis. 168, 174, 79 N. W. 2d 806, explained this court's position and pointed

out that the overtaking driver has been found equally negligent as a matter of law only in those cases where he had been "extraordinarily negligent." As an example of such extraordinary negligence, that opinion cited *Hephner v. Wolf* (1952), 261 Wis. 191, 52 N. W. 2d 390, a case which is relied on by defendants herein. In *Hephner*, it was established that the plaintiff had seen a truck stopped on the road ahead when he was 200 to 300 feet away but had not slowed down until he was within 50 to 75 feet and it was then too late to avoid the impact. The facts of *Hephner* are not analogous to those before us.

We conclude that the jury verdict that both Barts and Ratwik were causally negligent is amply supported by the evidence. In light of the facts it is not unreasonable that the apportionment should have been made in the manner determined by the jury. The percentages of negligence allocated to each party are not so disproportionate that a new trial should be ordered in the interests of justice. Under the facts which the jury could believe, the jury could well conclude that Barts was far more negligent than Ratwik. It was proper for the judge to conclude that he could not, as a matter of law, set aside the verdict and find Ratwik more than 50 percent negligent.

It is also claimed that improper instructions were given to the jury in respect to the duty of a driver— to not drive so slowly that he impedes the movement of traffic and to maintain a proper lookout to the rear when his position is likely to constitute a hazard to following vehicles. Under the circumstances, the instructions were correct. *See, Bentzler v. Braun, supra.* Moreover, the defendants did not object to the instructions when they were given and the motion for new trial reveals no objection to the instructions even at that late date. Accordingly, any right to have the matter

reviewed on appeal is waived when the objection is first made at that time. *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 518, 80 N. W. 2d 380.

We conclude that the trial court did not err in declining to find as a matter of law that Ratwik's negligence equaled or exceeded that of Barts. The jury's apportionment of negligence is not so disproportionate as to warrant a new trial and is completely supported by the evidence. A new trial is not required in the interests of justice.

*By the Court.*—Judgments affirmed.