SABINASZ, Plaintiff-Respondent, v. MILWAUKEE & SUB-URBAN TRANSPORT CORPORATION, a domestic corporation, Defendant-Appellant.

*No. 69 (1974).  Submitted on briefs December 2, 1975.—Decided February 3, 1976.*
(Also reported in 238 N. W. 2d 99.)

For the appellant there were briefs by *Harold A. Dall,
Terrance E. Davczyk* and *Kasdorf, Henderson, Dall,
Lewis & Swietlik,* all of Milwaukee.

For the respondent there was a brief by *Simarski,
Goodrich, Brennan & Stack,* and *Charles W. Collins* and
*Henry G. Piano,* of counsel, all of Milwaukee.

DAY, J.   The questions on appeal are whether the evidence was sufficient to support a jury finding of causal
negligence on the part of the defendant's bus operator

and, secondly, whether the award of $25,000 for personal injuries was excessive.

On May 25, 1970, at approximately 2:00 a.m., the plaintiff Daniel Sabinasz was the sole passenger on a bus operated by the defendant traveling south on South 6th Street at the intersection of West Becher Street in Milwaukee. A collision occurred between the bus and an automobile traveling west on Becher Street, driven by Dennis Burdey. The collision resulted in the death of the bus driver and in serious injuries to the plaintiff. At the intersection, both South 6th Street and Becher Street are 40 feet wide. At this time of night the traffic lights show a blinking yellow signal to vehicles on 6th Street and a blinking red signal to those on Becher Street. The speed limit on both streets is 30 miles per hour. The collision occurred at a point about six feet into the intersection from the north in the left-hand southbound lane. The bus was struck at a point near its front wheel by the front end of the car, crossed Becher Street diagonally and imbedded itself about four feet into the wall of a tavern on the southwest corner, a distance of about 54 feet from the point of impact, causing about $17,000 in damages to the building. Investigating police officers testified that there were no skid marks caused by any attempt to brake the bus.

Testimony at the trial was that from a point on 6th Street ten feet north of the intersection with Becher a driver could see three quarters of a block east on Becher, the direction from which Mr. Burdey was approaching. Mr. Sabinasz testified that at a point a block north of the intersection the speed of the bus was 35 to 40 miles per hour and that the bus did not brake, swerve, or slow down prior to the impact. There was no other testimony as to the speed of the bus or the conduct of the bus driver.

The defendants attempt to discredit Mr. Sabinasz' testimony by emphasizing his admissions that he had consumed three beers in the hour preceding the accident, and that he had told a police officer at the hospital, to which he was conveyed following the accident, that he hadn't seen anything. There was also testimony from an attending physician that Sabinasz had said that he had been "dozing" at the time of the accident, although Mr. Sabinasz testified that he could recall no such statement, and that the word "dozing" would have been a poor choice to express his mere "inattentiveness." None of the statements attributed to Mr. Sabinasz following the accident are inconsistent with the testimony that he gave at the trial. The testimony of the plaintiff was not rendered incredible by the physical facts surrounding the accident, and the weight to be given to it was a matter for the jury to determine.

Mr. Burdey testified that he had not seen the bus at all before the impact, and that he was traveling 30 to 35 miles per hour at the time of the accident. Police officers testified that Mr. Burdey had said to them that he consumed six or seven drinks of brandy at a tavern during the evening, and was traveling toward his home on Becher, that he had stopped for a light at 5th Street and thought that the light at 6th was green, and that he must have gone through it without stopping.

On the basis of the evidence the jury returned a special verdict finding that Mr. Burdey was 90 percent causally negligent, and the bus company 10 percent causally negligent. The trial court affirmed this finding in its decision on motions after verdict. A jury verdict as to the apportionment of negligence will be sustained if there is any credible evidence that under any reasonable view supports the verdict and removes the question from the realm of conjecture. *Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 772, 773, 151 N. W. 2d 706; *Britton v. Hoyt* (1974), 63 Wis. 2d 688, 693, 218 N. W. 2d 274; *Cheetham v. Piggly*

*Wiggly Madison Co.* (1964), 24 Wis. 2d 286, 290, 128 N. W. 2d 400. This court has said that one who seeks to upset a jury's apportionment of negligence has a difficult burden. *Werner Transportation Co. v. Barts* (1973), 57 Wis. 2d 714, 721, 205 N. W. 2d 394. In the present case the appellant would have to show that there is such a complete failure of proof that the verdict could only be based upon speculation. *Ernst, supra,* at 773; *Lemberger v. Koehring* (1974), 63 Wis. 2d 210, 222, 216 N. W. 2d 542. We must view the evidence in the light most favorable to the respondent. *Valiga v. National Food Co.* (1973), 58 Wis. 2d 232, 244, 206 N. W. 2d 377. This court has often said that it is only necessary to consider the evidence which sustains the jury's verdict. *Nietfeldt v. American Mutual Liability Ins. Co.* (1975), 67 Wis. 2d 79, 84, 226 N. W. 2d 418; *Valiga* at 242; *Kosnar v. J. C. Penney Co.* (1959), 6 Wis. 2d 238, 240, 94 N. W. 2d 642.

In view of testimony concerning the speed of the bus, the visibility three-quarters of a block along the street on which Burdey was approaching, and the failure of the bus to slow down, the jury could reasonably conclude that the bus operator was traveling at an excessive rate of speed and failed to see that Burdey, who was traveling at a substantial rate of speed, was not going to stop, and that the bus driver's conduct constituted negligence. The trial court's instructions defining negligence as to speed and lookout were properly given.

The bus company argues that the bus operator was under no duty to stop or slow down upon approaching the intersection since his vehicle had the right of way. A driver on an arterial highway may assume that a vehicle approaching from a nonarterial highway will obey the law. *Lundquist v. Western Casualty & Surety Co.* (1966), 30 Wis. 2d 159, 163, 140 N. W. 2d 241. This does not excuse the driver on the arterial highway from maintaining a proper lookout or relieve him of liability if the jury finds that he failed to do so. *Henden*

*v. Passow* (1968), 39 Wis. 2d 119, 123, 158 N. W. 2d 551; *Baker v. Herman Mut. Ins. Co.* (1962), 17 Wis. 2d 597, 602, 603, 117 N. W. 2d 725. In this case the bus' arterial status did not, as a matter of law, protect the operator from a jury finding of negligence as to lookout. Moreover, the street on which the bus was traveling was not an uncontrolled arterial, but was governed at the Becher Street intersection by flashing yellow lights. Section 346.39, Stats., says:

"Whenever flashing red or yellow signals are used they require obedience by vehicular traffic as follows: . . .

"(2) flashing yellow (caution signal). When a yellow lens is illuminated with rapid intermittent flashes, operators of vehicles may proceed through the intersection or past such signal only with caution."

This court has interpreted this statute to impose a greater duty of care on a driver proceeding through an intersection controlled by a flashing yellow light than on one proceeding on an arterial highway where an intersection is not so controlled. *Seitz v. Seitz* (1967), 35 Wis. 2d 282, 291, 292, 151 N. W. 2d 86.

In addition, the bus company is a common carrier, and while not an insurer of its passengers' safety, it must, because of the serious risks involved in the transport of passengers, exercise a commensurately high level of care. *Victorson v. Milwaukee & Suburban Transport Corp.* (1975), 70 Wis. 2d 336, 234 N. W. 2d 332.

The bus company argues that even assuming the driver was negligent, there is no evidence that such negligence was causal. The bus company points out that no evidence concerning the reaction time of the bus driver, or the braking distance required for a large bus, was introduced. Such evidence might have aided the bus company's defense and, of course, the bus company was free to introduce it. The evidence that was introduced was sufficient to support the jury's finding of causation. The fact that Mr. Burdey's car struck the front end of

the bus is particularly significant here, since it would indicate that only a slight retarding of speed by the bus would have been necessary to avoid the accident.

We now come to the question of damages. As a result of the accident, Mr. Sabinasz sustained comminuted fractures of the right tibia and fibula, a severe laceration on his right temple, and multiple abrasions and contusions on his arms and face. He testified that hundreds of glass fragments were removed from his left leg. The attending orthopedic surgeon, Dr. E. K. Rath, first performed a closed reduction of the fractures, but they required the additional surgical technique of open reduction a week later, and an intermedullary rod of one-half inch in diameter and 15 inches in length was inserted in Mr. Sabinasz's tibia to control the bone fragments. It was still there at the time of trial. The doctor testified that it would probably remain there permanently.

A hip-to-ankle cast was applied, which Mr. Sabinasz wore for six weeks, although he remained in the hospital for only 18 days. He used crutches for about eight weeks after the removal of the case and thereafter a cane for a short period of time. Dr. Rath saw the plaintiff a year after the accident and testified that the plaintiff's right leg was 1.5 centimeters shorter than the left. His right thigh and calf tissues had atrophied and the motion in his right ankle and knee was limited, the knee by an estimated 15 percent. This disability will be permanent.

At the time of the accident, the plaintiff was fifty-two years of age, and had a life expectancy of approximately twenty-one years. Before the accident the plaintiff had been employed as a janitor in two different establishments. He returned to both these jobs on a reduced basis in November, 1971, about six months after the accident. By the spring of 1972 he was performing most of his old functions but still suffered discomfort in his leg, particularly caused by changes in the weather. He also testified that he suffered discomfort if he was on his leg for any

length of time. The only medical restriction on his janitorial activities was a recommendation that he avoid climbing ladders, and that he could not expect that his right leg would perform as well as his left in lifting or carrying over uneven terrain, or for extended periods of time. At the trial the plaintiff testified that he "favored" his left leg and was no longer able to sustain long hikes that he took before the accident.

Based on this evidence the jury returned a special verdict finding damages for lost wages and medical expenses which are not in issue here. The question here is whether or not the additional award of $25,000 for personal injuries over and above medical expenses and lost wages is excessive.

In any appeal regarding damages, the first question to be determined is one of law. That is, does the record support the various elements that make up a particular damage claim, such as bodily injury, pain and suffering, extent of permanency, extent of disability, medical expenses, loss of income, loss of consortium and similar elements? In a case where a jury award of damages is sustained by the trial court over a claim of excessiveness, this court will look at the record to determine whether there is "any credible evidence which under any reasonable view supports the jury finding as to damages." *Puls v. St. Vincent Hospital* (1967), 36 Wis. 2d 679, 693, 154 N. W. 2d 308, quoted with approval in *Hein v. Torgesen* (1973), 58 Wis. 2d 9, 20, 205 N. W. 2d 408. This is the same standard, in principle, as that applied to a question of negligence where a jury finding has been sustained by a trial court, as discussed above. The reasoning of the *Puls Case* was earlier articulated in the case of *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. 2d 487, 489, 120 N. W. 2d 692, and quoted with approval in *Calero v. Del Chemical Corp.* (1975), 68 Wis. 2d 487, 509, 228 N. W. 2d 737. We

hold there is ample credible evidence in the record to sustain the jury award of $25,000 damages.

*By the Court.*—Judgment affirmed.