# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2499 |
| COMPLETE TITLE: | Eileen W. Legue, |
| | Plaintiff-Appellant, |
| | Department of Health and Human Services and Farmers |
| | Insurance Exchange, |
| | Involuntary-Plaintiffs, |
| | v. |
| | City of Racine and Amy L. Matsen, |
| | Defendants-Respondents. |

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | July 25, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 14, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Racine |
| JUDGE: | Charles H. Constantine |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ZIEGLER, BRADLEY, ROGGENSACK, JJJ., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-appellant, there were briefs by *Timothy S. Knurr* and *Gruber Law Offices, LLC*, Milwaukee, and oral argument by *Timothy S. Knurr*.

For the defendants-respondents, there was a brief by *Thomas M. Devine*, *Anthony P. Hahn*, *Jennifer O. Hemmer*, and *Hostak, Henzl & Bichler, S.C.*, Racine, and oral argument by *Thomas M. Devine*.

An amicus curiae brief was filed by *J. Michael Riley* and *Axley Brynelson, LLP*, Madison, on behalf of the Wisconsin Association for Justice.

2014 WI 92

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No.   2012AP2499
(L.C. No. **2011CV2090**)

STATE OF WISCONSIN         :       IN SUPREME COURT

Eileen W. Legue,

            Plaintiff-Appellant,

Department of Health and Human Services and
Farmers Insurance Exchange,

            Involuntary-Plaintiffs,

      v.

City of Racine and Amy L. Matsen,

            Defendants-Respondents.

FILED

JUL 25, 2014

Diane M. Fremgen
Clerk of Supreme Court

APPEAL from a judgment of the Circuit Court for Racine County, Charles H. Constantine, Judge. *Reversed and remanded.*

¶1   SHIRLEY S. ABRAHAMSON, C.J.   This is an appeal from a judgment of the circuit court for Racine County, Charles H. Constantine, Judge, dismissing the action of Eileen W. Legue,

the plaintiff,[1] against the City of Racine and Amy L. Matsen, a Racine police officer.[2] The court of appeals certified the appeal to this court pursuant to Wis. Stat. § (Rule) 809.61.

¶2 This appeal originates from a collision at an intersection in the City of Racine between the plaintiff's car and a Racine police car driven by Officer Matsen, the defendant. The police car was responding to an emergency dispatch calling the officer to the scene of an accident.

¶3 The collision of the automobiles presents an issue of law at the juncture of Wis. Stat. § 893.80 (2011-12),[3] governing the immunity of municipal government and its officers and employees, and Wis. Stat. § 346.03, governing the rules of the road for emergency vehicles.

¶4 The immunity statute, Wis. Stat. § 893.80(4), declares that no suit may be brought against any governmental actor for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions. "These functions are synonymous with discretionary acts."[4] The law of our state is

---

[1] The U.S. Department of Health and Human Services and Farmers Insurance Exchange are involuntary plaintiffs. We refer only to Eileen W. Legue as the plaintiff for the sake of simplicity.

[2] For the sake of simplicity we refer only to Amy L. Matsen, the police officer, as a defendant.

[3] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

[4] Willow Creek Ranch, LLC v. Town of Shelby, 2000 WI 56, ¶25, 235 Wis. 2d 409, 611 N.W.2d 693.

2

clear that for municipal government actors "the rule is liability——the exception is immunity."[5]

¶5    The statute governing the rules of the road applicable to emergency vehicles, Wis. Stat. § 346.03, sets forth statutory privileges of authorized emergency vehicles to exempt their operators from certain rules of the road, but also explicitly states that an operator of an emergency vehicle is not relieved of the "duty to drive or ride with due regard under the circumstances for the safety of all persons . . . ."  Wis. Stat. § 346.03(5).

¶6    The appeal raises two issues of law.  The more difficult one implicates the interplay between Wis. Stat. §§ 893.80(4) and 346.03(5).  The appeal raises the question of how to reconcile the statutory dichotomy of discretionary immunity and ministerial liability in § 893.80(4) with the statutory imposition of a duty on officers to operate an authorized emergency vehicle "with due regard under the circumstances for the safety of all persons" in § 346.03(5).

---

"When analyzing and applying Wis. Stat. § 893.80(4), we often have used the term 'discretionary' as a shorthand to refer to decisions of a governmental entity that are legislative, quasi-legislative, judicial or quasi-judicial."  Showers Appraisals, LLC v. Musson Bros, 2013 WI 79, ¶26, 350 Wis. 2d 509, 835 N.W.2d 226 (citing, inter alia, Willow Creek Ranch).

[5] Holytz v. City of Milwaukee, 17 Wis. 2d 26, 39, 115 N.W.2d 618 (1962).  See also Lodl v. Progressive N. Ins. Co., 2002 WI 71, ¶22, 253 Wis. 2d 323, 646 N.W.2d 314.

¶7 The issue is phrased by the court of appeals in its certification memorandum as a question the case law has left open:

> Does governmental immunity apply when someone is injured because an officer proceeds against a traffic signal as authorized by Wis. Stat. § 346.03(2)(b) (2011-12), if the officer slowed the vehicle and activated lights and sirens as required by § 346.03(3) but nonetheless arguably violated the duty to operate the vehicle "with due regard under the circumstances" as required by § 346.03(5)? . . . More specifically, . . . when, if ever, the "due regard" requirement imposed by § 346.03(5) becomes a "ministerial" obligation, violation of which will create an exception to governmental immunity.[6]

¶8 The second issue of law is whether, assuming liability for the police officer's alleged negligence, there was credible

---

[6] The court of appeals' certification memorandum viewed the following question as left open by Brown v. Acuity, 2013 WI 60, ¶42, 348 Wis. 2d 603, 833 N.W.2d 96:

> [D]oes immunity apply if an officer's manner of proceeding against a traffic signal fulfills the ministerial duties of Wis. Stat. § 346.03(2)(b) and (3) (that is, the officer slows the vehicle and activates lights and sirens) but arguably violates the duty to operate the vehicle "with due regard under the circumstances" as required by § 346.03(5)?

The City of Racine and Amy L. Matsen raised the issue of their governmental immunity by a post-verdict motion seeking judgment notwithstanding the verdict. Wis. Stat. § 805.14(5)(b). A circuit court's order granting a judgment notwithstanding the verdict is a ruling on an issue of law. The circuit court in effect granted the motion by dismissing the action on the ground of governmental immunity.

evidence to support the jury's verdict that the police officer's negligence caused the plaintiff's injuries.[7]

¶9 The first issue requires that we interpret the immunity statute and the rules of the road statute and apply them to the facts presented.

¶10 The plaintiff asserts that the immunity statute does not apply to the alleged negligent acts of the police officer in failing to keep a proper lookout and failing to maintain a speed that allowed for a proper lookout.  In contrast, the defendant asserts that the police officer's decisions regarding lookout and speed, which the plaintiff alleges are part of the duty of "due regard under the circumstances," are instead part of the officer's discretionary decision to enter the intersection against the red light.  In sum, the officer contends that her decisions regarding lookout and speed, when she proceeded through the red light after slowing down with the squad car's lights and siren engaged in compliance with Wis. Stat. § 346.03(2)(b) and (3), were immune discretionary acts.

¶11 Both parties rely on Estate of Cavanaugh v. Andrade, 202 Wis. 2d 290, 319, 550 N.W.2d 103 (1996), to support their respective positions.

¶12 The plaintiff relies on the following sentence in Cavanaugh:

---

[7] The City of Racine and Amy L. Matsen challenged the jury verdict by a motion for directed verdict.  The circuit court in effect granted the motion.

In sum, despite the general discretionary act immunity set forth in § 893.80(4), a negligence action may be sustained against an officer involved in a high-speed pursuit on the grounds that he or she breached the duty to operate the vehicle with "due regard under the circumstances" under § 346.03(5).

Cavanaugh, 202 Wis. 2d at 319.

¶13 The defendant relies on the very next sentence in Cavanaugh:

However, the negligent operation under § 346.03(5) does not include the discretionary decisions to initiate or continue a pursuit; such discretionary decisions continue to be afforded immunity under § 893.80(4).

Id.

¶14 In its certification memorandum, the court of appeals pointed out that Cavanaugh instructs that "an officer can be liable for negligent driving during an emergency response if damages were caused by the officer's negligent operation of the vehicle beyond the context of the discretionary decision itself." Yet this leaves us to puzzle: Which decisions go to negligent operation, and which go to the discretionary decision?

¶15 The court of appeals explains this gray area left by Cavanaugh as follows:

When, if ever, does a public officer's obligation to operate an emergency vehicle with "due regard under the circumstances" under Wis. Stat. § 346.03(5) create an exception to the governmental immunity provided by Wis. Stat. § 893.80?

When, if ever, does a public officer's decision to violate rules of the road during an emergency trigger potential liability for arguable failure to operate with "due regard under the circumstances" by making that decision?

6

¶16 We conclude that the immunity statute does not apply in the present case to the police officer's violation of the duty to operate the vehicle "with due regard under the circumstances." A contrary outcome would contravene Wis. Stat. § 893.80(4) and 346.03(5), public policy, the rules of statutory interpretation, and case law.

¶17 We further conclude that there was credible evidence to support the jury verdict of causal negligence on the part of the police officer.

¶18 For the reasons set forth, we reverse the judgment of the circuit court dismissing the action and remand the matter to the circuit court to reinstate the jury verdict.

¶19 We reach this conclusion by reasoning as follows:

I. We state the facts and procedural posture of the appeal.

II. We survey the current state of the doctrine of governmental immunity governed by Wis. Stat. § 893.80(4) to give context for our decision in the instant case.

III. We state and apply the rules of statutory interpretation to Wis. Stat. § 893.80(4) and § 346.03(5).

IV. We scrutinize our case law, especially Estate of Cavanaugh v. Andrade, 202 Wis. 2d 290, 550 N.W.2d 103 (1996), for principles guiding our understanding of the interplay of Wis. Stat. §§ 893.80(4) and 346.03(5), the distinction between immune

7

discretionary and non-immune ministerial acts under Wis. Stat. § 893.80(4), and the nature of the duty of "due regard" in Wis. Stat. § 346.03(5).

V. Upon holding that immunity does not apply in the instant case, we search the record for credible evidence to support the jury verdict that the police officer's alleged negligent acts caused the plaintiff's injury.

¶20 For the reasons set forth, we reverse the judgment of the circuit court dismissing the action and remand the matter to the circuit court to reinstate the jury verdict.

I

¶21 The facts and procedural history of this case are undisputed for purposes of this appeal.

¶22 On July 27, 2009, Police Officer Amy Matsen responded to a dispatch calling her to the scene of a motor vehicle accident with unknown injuries. She engaged in a full emergency response, activating her lights and siren in the squad car and exceeded the speed limit.

¶23 At around noon, she was proceeding northbound on Douglas Avenue in the City of Racine at a high rate of speed, occasionally using the car's bullhorn.

¶24 As she approached the intersection of Douglas Avenue and South Street, she observed the red light and slowed her car to 27 miles per hour. The posted speed limit was 30 miles per hour. Northbound traffic was stopped at the light. The officer maneuvered her car around the traffic stopped at the light and

8

into the southbound lanes of Douglas Avenue to enter the intersection.

¶25 Before impact, the officer saw another vehicle turn from the eastbound lane of South Street onto the southbound lane of Douglas Avenue. The officer testified that she had to maneuver her car to avoid the turning car.

¶26 When the officer's car entered the intersection, the plaintiff's car was eastbound on South Street at 30 miles per hour. Eastbound traffic, including the plaintiff, had a green light. The plaintiff did not slow down when she entered the intersection. The plaintiff's radio was on; the car's air conditioning was on; and the car windows were closed. The plaintiff did not see the officer's vehicle or hear the officer's siren or horn.

¶27 A KFC store sits on the southwest corner of the intersection. Both parties stipulated that the store blocked the view of cars entering the intersection. The plaintiff's car would not have been visible to the officer and the officer's car would not have been visible to the plaintiff until about two seconds before the collision occurred.

¶28 When both cars entered the intersection, the plaintiff's vehicle struck the driver's side of the officer's vehicle. The collision was recorded by a dash-mounted camera in the squad car.

¶29 Both the plaintiff and the officer were injured. The plaintiff brought suit against the police officer and the City of Racine for injuries sustained.

¶30 At trial, the police officer conceded that she considered it necessary to check for pedestrians and other vehicles and travel at a reasonable speed to make observations about traffic, in order to properly exercise her duty of care.

¶31 Additionally, the parties stipulated that City of Racine Police Department Policy and Procedure Number 812 dictates the requirements of an officer in responding to an emergency request. The policy reads in relevant part:

**POLICY:**

The operator of an emergency vehicle shall insure that he or she has due regard for the safety of all occupants of his or her vehicle as well as the safety of pedestrians and occupants of other vehicles.

**PROCEDURE:**

When responding to an emergency call or actively involved in a pursuit, the following requirements must be complied with:

1. Use emergency lights and siren simultaneously and continuously.

2. At all times, comply with the requirements of Wisconsin State Statute [Section] 346.03 relative to the giving of audible and visual signals (sub. 3).

a. The emergency vehicle operator may exceed the speed limit without giving audible and visual signals under the following circumstances (sub. 4):

1) While obtaining evidence of a speed violation

2) When responding to a call which he/she reasonably believes involves a felony in progress and reasonably believes any of the following:

> a) Knowledge of his/her presence may endanger the safety of a victim or other person.
>
> b) Knowledge of his/her presence may cause the suspected violator to evade apprehension.
>
> c) Knowledge of his/her presence may cause the suspected violator to destroy evidence of a suspected felony or may otherwise result in the loss of evidence of a suspected felony.
>
> d) Knowledge of his/her presence may cause the suspected violator to cease the commission of a suspected felony before he/she obtains sufficient evidence to establish grounds for arrest.

. . . .

5. Keep in mind that the exemptions granted above do not relieve department members from the duty to drive with due regard under the circumstances for the safety of all persons, taking into consideration:

> a. The type, actions and speed of the vehicle being pursued;
>
> b. The geographic area of pursuit and its population density;
>
> c. The time of day and day of week;
>
> d. The vehicular and pedestrian traffic present in area;
>
> e. The road and weather conditions;
>
> f. The officer's familiarity with the area of pursuit.

6. Although the conditions are identified individually, each can have an impact on another; therefore, the totality of the circumstances

11

should be considered. Their value for decision-making purposes is enhanced when considered in combination.

¶32 The jury returned a special verdict, finding that, inter alia: (1) the defendant was causally negligent with regard to the operation of her motor vehicle; (2) the plaintiff was causally negligent with regard to the operation of her motor vehicle; and (3) the defendant and the plaintiff were each fifty percent causally negligent. The jury awarded damages to the plaintiff in the amount of $129,799.72. The police officer did not seek damages in the present case.

¶33 After the verdict was returned, the officer brought a motion for judgment notwithstanding the verdict asserting the officer's immunity and a motion for a directed verdict challenging, inter alia, the jury's finding of the defendant's causal negligence.

¶34 On the motion for judgment notwithstanding the verdict, the circuit court ruled as a matter of law that because the police officer's decision to enter the intersection was discretionary, all her other allegedly negligent decisions were part of her discretionary decision and immune from suit. On the motion for a directed verdict, the circuit court ruled that the police officer had a duty to exercise due regard but that in the instant case the police officer's negligence was not causal.

## II

¶35 The instant case requires us to survey the current state of the doctrine of governmental immunity governed by Wis. Stat. § 893.80 to give context for our decision.

12

¶36 Prior to 1961, the common law doctrine of governmental immunity generally barred tort suits against a governmental entity. In Holytz v. City of Milwaukee, 17 Wis. 2d 26, 115 N.W.2d 618 (1962), the court rejected the immunity doctrine outright for municipalities and stated a new rule: "[H]enceforward, so far as governmental responsibility for torts is concerned, the rule is liability——the exception is immunity." Holytz, 17 Wis. 2d at 39. Nevertheless, Holytz declared that a municipality is not liable for acts done "in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions." Holytz, 17 Wis. 2d at 40.

¶37 The Holytz court noted that if the legislature deemed it better public policy, the legislature was of course free to reinstate immunity.

¶38 After Holytz, the legislature created Wis. Stat. § 331.43, now numbered § 893.80, setting forth the circumstances under which the general rule of governmental liability does not apply.[8] The statute codified Holytz's exception to municipal governmental liability: Government is immune for acts done in the exercise of "legislative, judicial, quasi-legislative, and quasi-judicial functions."[9]

---

[8] Ch. 198, Laws of 1963.

[9] See Milwaukee Metro. Sewerage Dist. v. City of Milwaukee, 2005 WI 8, ¶53, 277 Wis. 2d 635, 691 N.W.2d 658 (recognizing that § 893.80 "codified the holding in Holytz regarding immunity for legislative, judicial, quasi-legislative, or quasi-judicial acts") (citing Lange v. Town of Norway, 77 Wis. 2d 313, 314-18, 253 N.W.2d 240 (1977)).

¶39 Wisconsin Stat. § 893.80(4) (which is substantially the same as the provision adopted in 1963) presently reads as follows:

No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions (emphasis added).

¶40 The court has explicated the purpose of the government immunity statute as protecting separation of powers and avoiding judicial intrusion into the policy decisions of the other branches. The court explained:

The purpose of [governmental] immunity is to ensure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government, if such a policy decision, consciously balancing risks and advantages, took place.[10]

¶41 The exceptions to municipal and employee immunity represent "a judicial balance struck between 'the need of public officers to perform their functions freely [and] the right of an aggrieved party to seek redress.'"[11] The threat of liability and a lawsuit against governmental actors creates public policy

---

[10] Scarpaci v. Milwaukee County, 96 Wis. 2d 663, 687, 292 N.W.2d 816, 827 (1980) (internal quotation marks and citations omitted).

[11] Lodl, 253 Wis. 2d 323, ¶24 (quoting C.L. v. Olson, 143 Wis. 2d 701, 710, 422 N.W.2d 614 (1988)).

14

concerns, which governmental immunity seeks to reduce. The public policy concerns include:

> (1) The danger of influencing public officers in the performance of their functions by the threat of a lawsuit; (2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) the drain on valuable time caused by such actions; (4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5) the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public office.[12]

These public policy considerations have to be balanced against the need to protect the public against the misfortune of being injured by a government actor.[13]

¶42 The court has interpreted the words "legislative, quasi-legislative, judicial or quasi-judicial functions" in Wis. Stat. § 893.80(4) to be synonymous with the word

---

[12] Lodl, 253 Wis. 2d 323, ¶23 (quoting Lister v. Board of Regents, 72 Wis. 2d 282, 299, 240 N.W.2d 610 (1976)).

[13] C.L., 143 Wis. 2d at 708-09.

"discretionary."[14]  If an act is discretionary, then governmental immunity provided by Wis. Stat. § 893.80(4) applies.  There is no immunity, however, for liability associated with "the performance of ministerial duties imposed by law."[15]

---

[14] The rule was first announced in Lister v. Board of Regents, 72 Wis. 2d 282, 240 N.W.2d 610 (1976), which stated that "the most generally favored principle is that public officers are immune from liability for damages resulting from their negligence or unintentional fault in the performance of discretionary functions." Lister, 72 Wis. 2d at 301.  The court has echoed this notion multiple times.  See, e.g., Lodl, 253 Wis. 2d 323, ¶21 ("The statute immunizes against liability for legislative, quasi-legislative, judicial, and quasi-judicial acts, which have been collectively interpreted to include any act that involves the exercise of discretion and judgment."); Willow Creek Ranch, 235 Wis. 2d 409, ¶25 ("Under Wis. Stat. § 893.80(4), a municipality is immune from 'any suit' for 'acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.'  These functions are synonymous with discretionary acts.").

[15] Brown, 348 Wis. 2d 603, ¶42 (quoting Lodl, 253 Wis. 2d 323, ¶24).

The ministerial duty, according to some case law, is not so much an exception as a recognition that immunity law distinguishes between discretionary and ministerial acts, immunizing the performance of the former but not the latter. See Lodl, 253 Wis. 2d 323, ¶25.

¶43 The court's explication and application of the doctrine of governmental immunity under Wis. Stat. § 893.80(4) has come under increasing criticism by members of the court.[16]

¶44 The criticism came clearly and forcefully to the fore in Scott v. Savers Property & Casualty Insurance Co., 2003 WI 60, 262 Wis. 2d 127, 663 N.W.2d 715.

¶45 In Scott, a school guidance counselor gave incorrect information to a student regarding appropriate classes. As a result the student was ineligible for an athletic scholarship.[17] A majority of the court held that the counselor was immune, performing a discretionary act.

¶46 The separate writings in Scott explore the dissatisfaction surrounding the existing governmental immunity-governmental liability doctrines. See Scott, 262 Wis. 2d 127, ¶58 (Abrahamson, C.J., concurring) (noting the "jurisprudential chaos surrounding the phrase 'legislative, quasi-legislative, judicial or quasi-judicial functions' in § 893.80(4)"); id., ¶62 (Bablitch, J., concurring, joined by Crooks, J.) (decrying the

---

[16] Commentators have also noted the court's recent criticism of the doctrine and have themselves criticized the existing case law. See, e.g., Linda M. Annoye, Comment, Revising Wisconsin's Government Immunity Doctrine, 88 Marq. L. Rev. 971 (2005) (advocating for an additional requirement that a discretionary decision be a policy decision to receive immunity); Andrea Dudding, Comment, Reining in Municipalities: How To Tame the Municipal Immunity Monster in Wisconsin, 2004 Wis. L. Rev. 1741 (criticizing the application of governmental immunity to low level municipal actors and advocating immunity only for high level policy and decision making actors).

[17] See Scott v. Savers Prop. & Cas. Ins. Co., 2003 WI 60, 262 Wis. 2d 127, 663 N.W.2d 715.

existing doctrine as producing "an unjust result" and creating "injustice and inequity," and predicting that the doctrine of governmental immunity "will not[ ] stand much longer"); id., ¶82 (Prosser, J., dissenting) (criticizing the governmental immunity doctrine as "wrong and unjust" and "contrary to legislative intent"). See also Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶¶108-109, 350 Wis. 2d 554, 835 N.W.2d 160 (Gableman, J., concurring) (discretionary immunity has been used "to stretch governmental immunity beyond both the text of the statute and the Holytz decision" and has "essentially restored governmental immunity"); id., ¶¶182-83 (Abrahamson, C.J., dissenting, joined by Bradley, J.) (criticizing the majority opinion for ruling that the continuation of a nuisance constituted a ministerial act, even though the nuisance was created by a design defect, the design being a discretionary immune act).

¶47 Some of the criticism has centered on the court's alleged rewriting of the statute by substituting the word "discretionary" for the text of § 893.80(4), which immunizes acts in the exercise of "legislative, quasi-legislative, judicial or quasi-judicial functions."[18] These critics reason that an act may involve an exercise of judgment and discretion but is not an exercise of a "legislative, quasi-legislative, judicial, or quasi-judicial function."

---

[18] See, e.g., Scott, 262 Wis. 2d 127, ¶¶75-79 (Prosser, J., dissenting).

¶48 Other criticism has been directed at the case law for not consistently explaining the distinction between discretionary and ministerial acts. The test distinguishing between ministerial and discretionary acts has been disparaged as too malleable and not consistently applied.

¶49 Some cases have defined a discretionary act broadly as follows: "A discretionary act involves the exercise of judgment in the application of a rule to specific facts." Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶25, 235 Wis. 2d 409, 611 N.W.2d 693. Consequently, one would assume that a ministerial act, in contrast to a discretionary act, is one that does not involve the exercise of judgment in the application of a rule to specific facts.

¶50 Other cases appear to set forth a more specific, more difficult test to be met for an act to be characterized as ministerial: An act is ministerial if it "is absolute, certain and imperative, involving the performance of a specific task that the law imposes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion."[19] The court has also stated that a "duty imposed by the statute, regulation, or procedure must conform to all elements of a ministerial duty."[20]

---

[19] Brown, 348 Wis. 2d 603, ¶43 (quoting Lister, 72 Wis. 2d at 301). See also Kimps v. Hill, 200 Wis. 2d 1, 10-11, 546 N.W.2d 151 (1996) (quoting Olson, 143 Wis. 2d at 711-12 (quoting Lister, 72 Wis. 2d at 301)).

[20] Brown, 348 Wis. 2d 603, ¶44 (quoting Yao v. Chapman, 2005 WI App 200, ¶31, 287 Wis. 2d 445, 705 N.W.2d 272).

19

¶51 This "absolute, certain and imperative" and "time, mode and occasion" test for a ministerial act has engendered disagreement among members of the court regarding its meaning and its application.

¶52 For example, in Pries v. McMillon, 2010 WI 63, ¶¶33-37, 326 Wis. 2d 37, 784 N.W.2d 648, the company's instructions for dismantling a horse stall at State Fair Park admonished, "[A]lways have someone holding up the piece that you are taking down." The instructions do not state where the piece is to be held or how high it is to be held. Nevertheless, the court ruled that the company's language satisfied the requirements of a ministerial duty.

¶53 The three-justice dissent asserted that the written instructions suffer from "a critical lack of particularity as to time, mode and occasion for performance."[21]

¶54 In Cavanaugh, the court noted that although Wis. Stat. § 346.03(6) requires law enforcement agencies to provide written guidelines, the statute does not specify the time, mode, or occasion for the agency to provide the written guidelines. Nevertheless, Cavanaugh held that the law enforcement agency's duty to promulgate guidelines under § 346.03(6) was a ministerial function and that the agency's failure to promulgate written guidelines conforming to the statute rendered the agency liable.

---

[21] Pries v. McMillon, 2010 WI 63, ¶77, 326 Wis. 2d 37, 784 N.W.2d 648 (Bradley, J., dissenting, joined by Roggensack, J. & Gableman, J.).

¶55 The following functions have been held to be discretionary and thus immune: A school district benefit specialist giving information to an employee regarding employment benefits;[22] a University faculty member constructing a volleyball net base for a physical education class;[23] and a police officer directing traffic at an intersection when the traffic light was not functioning despite mandatory police department protocols for directing traffic.[24]

¶56 Conversely, the following functions have been held to be ministerial and not immune: A sewer authority's maintenance of a sewer system;[25] a University of Wisconsin department chair's offer of employment to a faculty member;[26] a director of facilities' construction and maintenance of a platform at Camp Randall according to safety regulations.[27]

¶57 In the face of the criticisms of and inconsistencies in the law of governmental immunity, our state nevertheless continues to operate under the doctrine of immunity for discretionary acts and liability for ministerial acts.

---

[22] See Kierstyn v. Racine Unified School Dist., 228 Wis. 2d 81, 596 N.W.2d 417 (1999).

[23] Kimps, 200 Wis. 2d 1.

[24] See Lodl, 253 Wis. 2d 323.

[25] Milwaukee Metro. Sewerage Dist., 277 Wis. 2d 635.

[26] Bicknese v. Sutula, 2003 WI 31, 260 Wis. 2d 713, 660 N.W.2d 289.

[27] Umansky v. ABC Ins. Co., 2009 WI 82, 319 Wis. 2d 622, 769 N.W.2d 1.

¶58 The parties frame their positions within the discretionary-ministerial dichotomy. The plaintiff contends that the duty of the police officer to act with "due regard under the circumstances," under Wis. Stat. § 346.03(5) is a ministerial function that is not immune under Wis. Stat. § 893.80(4). As might be expected, the police officer asserts that she was acting in the exercise of a discretionary function and is therefore immune from suit.

¶59 With this general overview of the current state of the doctrine of governmental immunity governed by Wis. Stat. § 893.80(4), we look to the applicable statutes, regulations, and procedures to determine how to characterize the police officer's conduct in the intersection in the present case.

III

¶60 We turn to the interpretation of Wis. Stat. § 893.80(4) and § 346.03(5) and their application to the facts of the present case. Interpretation and application of a statute is ordinarily a question of law that this court determines independently but benefiting from the analyses of the circuit court and court of appeals.[28]

¶61 We interpret a statute by looking at the text of the statute.[29] The statutory language is examined within the context

---

[28] DOR v. River City Refuse Removal, Inc., 2007 WI 27, ¶26, 299 Wis. 2d 561, 729 N.W.2d 396.

[29] Klemm v. Am. Transmission Co., LLC, 2011 WI 37, ¶18, 333 Wis. 2d 580, 798 N.W.2d 223.

in which it is used.[30]   Words are ordinarily interpreted according to their common and approved usage; technical words and phrases and others are ordinarily interpreted according to their technical meaning.[31]   Statutes are interpreted to give effect to each word and to avoid surplusage.[32]   We interpret a statute by examining the purpose of a statute[33] and the consequences of alternative interpretations.[34]   We also examine

---

[30] Alberte v. Anew Health Care Servs., Inc., 2000 WI 7, ¶10, 232 Wis. 2d 587, 592, 605 N.W.2d 515 ("While it is true that statutory interpretation begins with the language of the statute, it is also well established that courts must not look at a single, isolated sentence or portion of a sentence, but at the role of the relevant language in the entire statute."); Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659 (contextual approach is not new); Klemm, 333 Wis. 2d 580, ¶18 ("The statutory language is examined within the context in which it is used.").

[31] Klemm, 333 Wis. 2d 580, ¶18; see also Wis. Stat. § 990.01.

[32] See, e.g., Klemm, 333 Wis. 2d 580, ¶18; Pawlowski v. Am. Family Mut. Ins. Co., 2009 WI 105, ¶22 n.14, 322 Wis. 2d 21, 777 N.W.2d 67 (citing Donaldson v. State, 93 Wis. 2d 306, 315, 286 N.W.2d 817 (1980)).

[33] State v. Hanson, 2012 WI 4, ¶16, 338 Wis. 2d 243, 808 N.W.2d 390; Klemm, 333 Wis. 2d 580, ¶18; Lagerstrom v. Myrtle Werth Hosp.-Mayo Health Sys., 2005 WI 124, ¶51, 285 Wis. 2d 1, 700 N.W.2d 201.

[34] State v. Hayes, 2004 WI 80, ¶16, 273 Wis. 2d 1, 681 N.W.2d 203; Teschendorf v. State Farm Ins. Cos., 2006 WI 89, ¶30, 293 Wis. 2d 123, 717 N.W.2d 258 (considering "alternative interpretation" to evaluate potential absurd results); State v. Cole, 2003 WI 59, ¶66, 262 Wis. 2d 167, 663 N.W.2d 700 (considering consequences of a party's alternative interpretation).

our case law interpreting the statute[35] and the statutory history of the statute to determine its meaning.[36]

¶62 We look first to the text of the two relevant statutes. The most noticeable fact is that the texts of the two statutes do not refer to each other. At first blush, they seem to have no relationship to each other at all.

¶63 As we noted previously, immunity is granted in § 893.80(4) to governmental actors for acts in the exercise of "legislative, quasi-legislative, judicial or quasi-judicial functions," which the court has deciphered as synonymous with a wide range of functions which are described as "discretionary."

¶64 The words "liability," "immunity," "no suit," "discretionary," "ministerial," "legislative," "quasi-legislative," "judicial" or "quasi judicial" do not appear in Wis. Stat. § 346.03.

---

[35] Nowell v. City of Wausau, 2013 WI 88, ¶21, 351 Wis. 2d 1, 838 N.W.2d 852; Juneau County Star-Times v. Juneau County, 2013 WI 4, ¶66, 345 Wis. 2d 122, 824 N.W.2d 457; State v. Davison, 2003 WI 89, ¶61, 263 Wis. 2d 145, 666 N.W.2d 1.

[36] "Statutory history encompasses the previously enacted and repealed provisions of a statute. By analyzing the changes the legislature has made over the course of several years, we may be assisted in arriving at the meaning of a statute. Therefore, statutory history is part of the context in which we interpret the words used in a statute." Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581 (citations omitted). See, e.g., LaCount v. Gen. Cas. Co., 2006 WI 14, ¶31, 288 Wis. 2d 358, 709 N.W.2d 418; VanCleve v. City of Marinette, 2003 WI 2, ¶6, 258 Wis. 2d 80, 655 N.W.2d 113; State v. Byers, 2003 WI 86, ¶¶22-27, 263 Wis. 2d 113, 665 N.W.2d 729; Hughes v. Chrysler Motors Corp., 197 Wis. 2d 973, 980-84, 542 N.W.2d 148 (1996).

24

¶65 Wisconsin Stat. § 346.03 lays out various circumstances under which an operator of an authorized emergency vehicle may exercise a "privilege" set forth in the section. The "privileges" exempt an operator of an authorized emergency vehicle from complying with certain rules of the road, including: stopping, standing, or parking; proceeding past a red or stop signal or stop sign; exceeding the speed limit; and leaving doors of a parked vehicle open. Exercising these privileges is, however, subject to the conditions stated in § 346.03 (2) to (5m).

¶66 Section 346.03 reads in full as follows:

(1) The operator of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law, when responding to but not upon returning from a fire alarm, when transporting an organ for human transplantation, or when transporting medical personnel for the purpose of performing human organ harvesting or transplantation immediately after the transportation, may exercise the privileges set forth in this section, but subject to the conditions stated in subs. (2) to (5m).

(2) The operator of an authorized emergency vehicle may:

(a) Stop, stand or park, irrespective of the provisions of this chapter;

(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(c) Exceed the speed limit;

(d) Disregard regulations governing direction of movement or turning in specified directions.

25

(2m) Notwithstanding s. 346.94(20), a law enforcement officer, a fire fighter, or emergency medical personnel may open and leave open any door of an authorized emergency vehicle when the vehicle is stopped, standing, or parked and the person is performing official duties.

(3) The exemption granted the operator of an authorized emergency vehicle by sub. (2)(a) applies only when the operator of the vehicle is giving visual signal by means of at least one flashing, oscillating or rotating red light except that the visual signal given by a police vehicle may be by means of a blue light and a red light which are flashing, oscillating or rotating, except as otherwise provided in sub. (4m).  The exemptions granted by sub. (2)(b), (c) and (d) apply only when the operator of the emergency vehicle is giving both such visual signal and also an audible signal by means of a siren or exhaust whistle, except as otherwise provided in sub. (4) or (4m).

(4) Except as provided in sub. (4m), a law enforcement officer operating a police vehicle shall otherwise comply with the requirements of sub. (3) relative to the giving of audible and visual signals but may exceed the speed limit without giving audible and visual signal under the following circumstances:

(a) If the officer is obtaining evidence of a speed violation.

(b) If the officer is responding to a call which the officer reasonably believes involves a felony in progress and the officer reasonably believes any of the following:

1. Knowledge of the officer's presence may endanger the safety of a victim or other person.

2. Knowledge of the officer's presence may cause the suspected violator to evade apprehension.

3. Knowledge of the officer's presence may cause the suspected violator to destroy evidence of a suspected felony or may otherwise result in the loss of evidence of a suspected felony.

4. Knowledge of the officer's presence may cause the suspected violator to cease the commission of a suspected felony before the officer obtains sufficient evidence to establish grounds for arrest.

(4m) A law enforcement officer operating a police vehicle that is a bicycle is not required to comply with the requirements of sub. (3) relative to the giving of audible and visual signals.

(5) The exemptions granted the operator of an authorized emergency vehicle by this section do not relieve such operator from the duty to drive or ride with due regard under the circumstances for the safety of all persons nor do they protect such operator from the consequences of his or her reckless disregard for the safety of others.

(5m) The privileges granted under this section apply to the operator of an authorized emergency vehicle under s. 340.01(3)(dg) or (dh) only if the operator has successfully completed a safety and training course in emergency vehicle operation that is taken at a technical college under ch. 38 or that is approved by the department and only if the vehicle being operated is plainly marked, in a manner prescribed by the department, to identify it as an authorized emergency vehicle under s. 340.01(3)(dg) or (dh).

(6) Every law enforcement agency that uses authorized emergency vehicles shall provide written guidelines for its officers and employees regarding exceeding speed limits under the circumstances specified in sub. (4) and when otherwise in pursuit of actual or suspected violators. The guidelines shall consider, among other factors, road conditions, density of population, severity of crime and necessity of pursuit by vehicle. The guidelines are not subject to requirements for rules under ch. 227. Each law enforcement agency shall review its written guidelines by June 30 of each even-numbered year and, if considered appropriate by the law enforcement agency, shall revise those guidelines.

¶67 In contrast to the other subsections' exemption of emergency vehicle operators from compliance with certain rules

27

of the road, subsection (5) of Wis. Stat. § 346.03 imposes a duty on an operator of an authorized emergency vehicle. Subsection (5) states that the exemptions from the rules of the road granted an operator of an authorized emergency vehicle "do not relieve the operator from the duty to drive or ride with due regard under the circumstances for the safety of all persons and do not protect the operator from the consequences of his or her reckless disregard for the safety of others."

¶68  Thus, § 346.03(5), as the court of appeals has explained, "qualifies the privileges granted by secs. 346.03(1) to (4)."[37]  Subsection (5) does not, however, explicitly impose liability on a governmental actor.

¶69  That Wis. Stat. § 346.03(5) is to be interpreted as imposing liability on a governmental actor is supported by the text of Wis. Stat. § 346.03(5) imposing a duty of due regard, in the context of the exemption/privilege language of the other provisions of § 346.03.  This language leads us to conclude that an exemption or privilege begets immunity and a duty begets liability.  Why would the legislature exempt an operator of an authorized emergency vehicle from complying with certain rules

---

[37] City of Madison v. Polenska, 143 Wis. 2d 525, 527, 421 N.W.2d 862, 863 (Ct. App. 1988).

28

of the road and impose a duty of due regard unless a violation of the duty can result in liability?[38]

¶70  Our case law has interpreted Wis. Stat. § 346.03(5) as providing a cause of action arising out of a breach of an emergency vehicle operator's duty created by the statute.  See, e.g., Brown v. Acuity, 2013 WI 60, 348 Wis. 2d 603, 833 N.W.2d 96; Cavanaugh, 202 Wis. 2d 290; see also Montalto v. Fond du Lac Cnty., 272 Wis. 552, 76 N.W.2d 279 (1956) (holding that a negligence action could be sustained based on an ambulance operator's failure to exercise due regard for the safety of others).

¶71  The statutory history of Wis. Stat. § 346.03(5) also supports this interpretation.

¶72  In 1915, the legislature exempted police officers from automobile regulations and rules of the road when the police officers were pursuing violators of the automobile code, but did not explicitly provide for the police officer's liability.[39]

¶73  In Suren v. Zuege, 186 Wis. 264, 201 N.W. 722 (1925), the court interpreted the statute as rendering a police officer

---

[38] See Candee v. Egan, 84 Wis. 2d 348, 357, 267 N.W.2d 890 (1978) ("Even though a statute does not expressly provide a civil remedy for those injured by its violation, this court will imply such a remedy if it concludes that the legislature intended such a remedy to exist.").

[39] Section 1, ch. 511, Laws of 1915 provided:  "Any police officer of any city, county, town or village shall be exempt from [the sections of the code regarding auto regulation], while actually in pursuit of and attempting to apprehend a person who is violating any of the provisions of these sections."

liable for breach of the duty of ordinary care for the safety of others and himself, stating:

> This statutory exemption . . . while rendering [the officer] immune from prosecution or preventing the application of the rule that such excess of speed may establish a prima facie presumption of negligence, <u>does not absolve [the officer] from the duty to exercise that which, under those circumstances and conditions, is reasonable and ordinary care for the safety of others and himself</u>.

<u>Suren</u>, 186 Wis. at 267 (emphasis added).

¶74  In its revision of the automobile code in 1929, the legislature adopted an explicit provision that the emergency vehicle operator is not protected from the consequences of a reckless disregard for the safety of others.[40]

¶75  In the same 1929 legislation, the legislature exempted operators of emergency vehicles from speed restrictions.[41]  In 1947, the legislature amended the speed limit statute to state that the exemption from speed limits does not relieve an

---

[40] Section 3, ch. 454, Laws of 1929, codified at Wis. Stat. § 85.12(5) (1929), provides in relevant part:

> (5) EXEMPTIONS TO AUTHORIZED EMERGENCY VEHICLES.  The provisions of said sections regulating the movement, parking and standing of vehicles shall not apply to authorized emergency vehicles while the operator of such vehicle is operating the same in an emergency in the necessary performance of public duties.  <u>This exemption shall not, however, protect the operator of any such vehicle from the consequence of a reckless disregard for the safety of others</u> (emphasis added).

[41] "The speed limitations set forth in section 85.40 shall not apply to authorized emergency vehicles when operating in emergencies."  § 3, ch. 454, Laws of 1929, codified as Wis. Stat. § 85.42 (1929).

operator of an authorized emergency vehicle from either the duty to operate with "due regard" for the safety of all persons using the highway, nor shall it protect the operator from the consequence of a reckless disregard of the safety of others.[42]

¶76  Thus, even in the pre-Holytz era, authorized emergency vehicle operators who were exempt from obeying certain traffic laws were nonetheless "bound to exercise reasonable precautions against the extraordinary dangers of the situation which duty compels them to create."  Montalto, 272 Wis. at 558.

¶77  In Montalto, the court concluded that Wis. Stat. §§ 85.12(5) and 85.40(5) (1953) could be the basis of an action against the operator of an emergency vehicle:

> The right of way given to public service vehicles and their exemption from traffic regulations, however, do not relieve their operators from the duty of exercising due care to prevent injury to themselves and others lawfully upon the ways.  Although it is generally recognized that firemen driving to a fire,

---

[42] Section 1, ch. 407, Laws of 1947, codified as Wis. Stat. § 85.40(5) (1947), provides as follows:

(5) The speed limitations set forth in this section shall not apply to authorized emergency vehicles when responding to emergency calls and the operators thereof sound audible signal by siren or exhaust whistle, and when such emergency vehicle is equipped with at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle. This provision shall not relieve the operator of an authorized emergency vehicle from the duty to operate with due regard for the safety of all persons using the highway, nor shall it protect the operator of any such vehicle from the consequence of a reckless disregard of the safety of others (emphasis added).

31

when the safety of lives and property are at stake, are in many instances duty bound to proceed at a rate of speed greater than that which any ordinary driver could justify and cannot be required to stop for red lights or other traffic signals, they must include in the care they are bound to exercise reasonable precautions against the extraordinary dangers of the situation which duty compels them to create. They must keep in mind the speed at which their vehicle is traveling and the probable consequences of their disregard of traffic signals . . . .

Montalto, 272 Wis. at 558 (quoting Russell v. Nadeau, 29 A.2d 916, 917 (Me. 1943)).

¶78 In 1957, the legislature enacted a new vehicle code, codifying the new rules of the road in Wis. Stat. Chapter 346 (1957) and adopting a provision substantially the same as the present § 346.03(5).

¶79 Section 1, ch. 260, Laws of 1957, codified at Wis. Stat. § 346.03(5) (1957), provides in relevant part:

(5) The exemptions granted the operator of an authorized emergency vehicle by this section do not relieve such operator from the duty to drive with due regard under the circumstances for the safety of all persons nor do they protect such operator from the consequences of his reckless disregard for the safety of others.

¶80 The 1957 Legislative Council note to ch. 260, Laws of 1957, also supports our interpretation of Wis. Stat. § 346.03(5) as creating liability:

Subsection (5) makes clear that the operator of an authorized emergency vehicle is not relieved of the duty to drive with due care. This is the rule applicable under the present law with respect to violation of the speed law . . . but § 85.12(5) seems to make the operator of an authorized emergency vehicle liable for his negligence in the case of disregard of other rules of the road only if such

negligence amounts to a reckless disregard of the safety of others.  The Supreme Court so held in Montalto v. Fond du Lac County, 272 Wis. 2d 442, 76 N.W.2d 279 (1956).  There is no logical basis for this distinction and it has been eliminated.

Wisconsin Annotations 1804 (1960).

¶81  In Cavanaugh, 202 Wis. 2d 290, the court held that the standard for operating an authorized emergency vehicle "with due regard under the circumstances for the safety of all persons" is a negligence standard.  Cavanaugh, 202 Wis. 2d at 316.

¶82  Thus, the statutory history of Wis. Stat. § 346.03(5) supports our interpretation that it is a liability statute.

¶83 Our interpretation of the language and statutory history of Wis. Stat. § 346.03(5) as a liability statute dovetails with § 893.80(5), a subsection of the immunity statute that we have not previously discussed.

¶84 The legislature affirmed in Wis. Stat. § 893.80(5) that statutes other than § 893.80 might govern liability of governmental actors.  The legislature declared in subsection (5) of § 893.80 that "[w]hen rights or remedies are provided by any other statute against any [governmental actor] for injury,

33

damage or death, such statute shall apply and the limitations in sub. (3) [referring to caps on damages] shall be inapplicable."[43]

¶85 Wisconsin Stat. § 893.80(5) provides in full as follows:

> Except as provided in this subsection, the provisions and limitations of this section shall be exclusive and shall apply to all claims against a volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency or against any officer, official, agent or employee thereof for acts done in an official capacity or the course of his or her agency or employment. When rights or remedies are provided by any other statute against any political corporation, governmental subdivision or agency or any officer, official, agent or employee thereof for injury, damage or death, such statute shall apply and the limitations in sub. (3) shall be inapplicable (emphasis added).

¶86 This language makes clear that the legislature envisioned the possibility that other statutes might create rights or remedies that plaintiffs can pursue against governmental actors despite Wis. Stat. § 893.80(4)'s codification of immunity for legislative, quasi-legislative, judicial, or quasi-judicial acts.

---

[43] The court has interpreted the last sentence to refer specifically to the applicability of damage caps and not to other subsections of § 893.80. "[Section] 893.80(5), Stats., only directs that when a claim is based on another statute, the damage limitations of sec. 893.80(3) do not apply. Section 893.80(5) does not say that the notice provisions of sec. 893.80(1) do not apply." DNR v. City of Waukesha, 184 Wis. 2d 178, 192-93, 515 N.W.2d 888, 893-94 (1994), abrogated on other grounds by State ex rel. Auchinleck v. Town of LaGrange, 200 Wis. 2d 585, 547 N.W.2d 587 (1996).

¶87 Our rules of statutory interpretation regarding surplusage militate in favor of interpreting Wis. Stat. § 346.03(5) as imposing liability on the officer in the instant case for failure to exercise due regard.

¶88 The defendant police officer in the present case invites us to view Wis. Stat. § 346.03(5) and its "due regard" requirement as a "vague suggestion."[44] Yet the statute is not vague in its imposition of duty: The section "does not relieve [the] operator from the duty" of due regard. The defendant is asking us to read the mandate of § 346.03(5) out of the statute entirely.

¶89 The defendant police officer further avers that because she met the requirements of Wis. Stat. § 346.03(2)(b) and § 346.03(3), that is, she slowed her vehicle and activated her lights and siren, the duty of "due regard" was already met.[45]

¶90 Reading compliance with Wis. Stat. § 346.03(2)(b) and § 346.03(3) as meeting the due regard standard, as the defendants urge, ignores the language of § 346.03(5). Subsection (5) explicitly states that the duty of due regard exists notwithstanding the other exemptions or privileges in § 346.03: "The exemptions granted . . . by [§ 346.03] do not relieve such operator from the duty to drive or ride with due

---

[44] Brief of Defendants-Respondents at 18.

[45] The court of appeals asks in its certification memorandum whether compliance with the slow-down and lights-and-sirens requirements are sufficient to demonstrate "due regard" in the instant case.

35

regard under the circumstances for the safety of all persons . . . ." The text of § 346.03(5) envisions "due regard" as a standard of care existing <u>independently</u> of the exemptions granted by § 346.03.

¶91 A holding adopting the police officer's interpretation that compliance with the exemptions or privileges authorized in § 346.03 meets the duty of "due regard" under § 346.03(5) would treat the language of (5) as surplusage. Such a holding would do exactly what the statute forbids, namely it would relieve the operator of this duty. We decline to do so.

¶92 To be true to Wis. Stat. § 893.80(4) and (5) and § 346.03(5), and the rules of statutory interpretation, we conclude that the police officer in the instant case who is alleged to have breached the duty of "due regard" under § 346.03(5) is not immune from suit under § 893.80(4).

IV

¶93 We turn now from applying rules of statutory interpretation to scrutinizing our case law, especially <u>Estate of Cavanaugh v. Andrade</u>, 202 Wis. 2d 290, 550 N.W.2d 103 (1996), for principles guiding our understanding of the interplay of Wis. Stat. § 893.80(4) and § 346.03(5), the distinction between immune discretionary and non-immune ministerial acts under Wis. Stat. § 893.80(4), and the nature of "due regard" in § 346.03(5).

¶94 At first glance, the question whether Wis. Stat. § 893.80(4), the immunity statute, bars claims brought for breach of an emergency vehicle operator's duty of "due regard

36

under the circumstances" appears to be resolved by Cavanaugh. A closer inspection reveals that it is not.

¶95 The Cavanaugh court declared, as we noted previously, that "despite the general discretionary act immunity set forth in § 893.80(4), a negligence action may be sustained against an officer involved in a high-speed pursuit on the grounds that he or she breached the duty to operate the vehicle with 'due regard under the circumstances' under § 346.03(5)." Cavanaugh, 202 Wis. 2d at 319.

¶96 The dilemma presented by the Cavanaugh opinion is that it distinguishes the discretionary decision to pursue (entitled to immunity under Wis. Stat. § 893.80(4)) from the physical operation of the vehicle (not entitled to immunity under § 893.80(4)) without clarifying which acts are included in the decision to pursue and which acts are included within the physical operation of the vehicle.

¶97 The police officer contends that her lookout and speed were part and parcel of her decision to proceed through the red light, after slowing down with the police car's lights and siren engaged pursuant to Wis. Stat. § 346.03(2)(b) and (3). The decision to proceed, the officer reasons, was a discretionary act and thus her lookout and speed were subject to immunity akin to the decision to engage and persist in pursuit in the Cavanaugh case.

¶98 In contrast, the plaintiff argues that the police officer's negligence, such as the officer's failure to keep a lookout, goes to the "physical operation of the vehicle."

37

¶99  We first examine Cavanaugh more closely to distill its teachings.  We then turn to a closer examination of the discretionary-ministerial dichotomy in Cavanaugh.

A

¶100 First, the facts and reasoning of Cavanaugh.  In Cavanaugh, a driver pursued by a police officer in a high-speed pursuit collided with another car, killing the victim.  The victim's estate brought an action against the officer, the city, and the other driver for their negligence.  The estate alleged that the officer was negligent in failing to terminate the pursuit and negligent with respect to the operation of the vehicle, contrary to the "due regard" standard under Wis. Stat. § 346.03(5).  The estate also alleged that the city was negligent in failing to provide adequate guidelines for high-speed chases, contrary to Wis. Stat. § 346.03(6).  The jury found the officer and the city each partially negligent and awarded damages to the victim.[46]

¶101 In motions for judgment notwithstanding the verdict, the officer and the city each raised claims of immunity.  The circuit court denied both claims, holding that the officer and the city were not immune.  The court of appeals reversed the circuit court, holding that the city was immune but the officer was not.

---

[46] The jury found the other driver 75 percent negligent, the officer 2 percent negligent, and the city 23 percent negligent. Cavanaugh, 202 Wis. 2d at 297.

38

¶102 This court reversed the court of appeals, holding, inter alia:

1) The city had a ministerial duty to create guidelines pursuant to Wis. Stat. § 346.03(6) and was not immune from suit for its negligence in failing to adopt such guidelines;

2) The officer's decision to initiate and continue the high-speed pursuit was discretionary and the officer was immune from liability for his alleged negligent speed; and

3) A suit for negligence may be maintained against an officer engaged in a high-speed pursuit notwithstanding the immunity statute if the officer's operation of the vehicle breaches the statutory duty of "due regard."[47]

¶103 With regard to the first holding, the Cavanaugh majority declared that Wis. Stat. § 346.03(6), which requires law enforcement agencies to create guidelines, established a ministerial duty. The Cavanaugh court reasoned that the statutory mandate that the law enforcement agency "shall provide written guidelines" and "shall consider" specific factors dictates actions that "are absolute, certain and imperative,

---

[47] The Cavanaugh court also held that the officer was not liable "because there [was] no credible evidence . . . that any alleged negligence . . . with respect to physical operation of [the] vehicle was a substantial factor in causing the accident." Cavanaugh, 202 Wis. 2d at 322.

involving merely the performance of a specific task." Cavanaugh, 202 Wis. 2d at 301.

¶104 With regard to the second and third holdings, the Cavanaugh court distinguished between two separate functions of the police officer——"an officer's discretionary decision to initiate and continue a high-speed chase" and the officer's "physical operation of the vehicle." Cavanaugh, 202 Wis. 2d at 317.

¶105 The Cavanaugh court considered the decision to initiate and continue a high-speed chase to be inherently discretionary. It further concluded that the officer's allegedly negligent acts (e.g., speeding) were "[i]nherent in the decision to pursue." Cavanaugh, 202 Wis. 2d at 316 (citing City of Lancaster v. Chambers, 883 S.W.2d 650, 655 (Tex. 1994)).

¶106 Nevertheless, the Cavanaugh court did not create a "blanket immunity from all liability by virtue of [a public officer's] involvement in a pursuit." Cavanaugh, 202 Wis. 2d at 317. The Cavanaugh court drew a distinction between acts relating to the decision to pursue and acts relating to negligent physical operation of the vehicle, with the former being immune and the latter being subject to liability. The Cavanaugh court explained:

> Our holding that 893.80(4) provides immunity for an officer's decision to initiate or continue a pursuit does not mean, as suggested by the dissent to this section, that officers are afforded blanket immunity from all liability by virtue of their involvement in a pursuit. We agree with the court of appeals that an officer may be negligent pursuant to 346.04(5) for

failing to physically operate his or her vehicle with due regard for the safety of others.

This distinction between an officer's discretionary decision to initiate and continue a pursuit and the physical operation of the vehicle has been recognized by other jurisdictions . . . .

Cavanaugh, 202 Wis. 2d at 317. Cavanaugh thus attempted to segregate an officer's decision to initiate or continue a pursuit from that officer's physical operation of the vehicle with due regard under the circumstances for the safety of all persons.

¶107 To support its distinction between the decision to pursue, which is immune, and the physical operation of the vehicle, which is not immune, the Cavanaugh court relied on two sister-state cases, Thornton v. Shore, 666 P.2d 655 (Kan. 1983), and Kelly v. City of Tulsa, 791 P.2d 826 (Okla. Civ. App. 1990), interpreting statutory language similar to Wis. Stat. § 346.03(5).

¶108 These cases declare that under statutes similar to Wis. Stat. § 346.03(5) requiring "due care" during emergency vehicle responses, the "duty of due care" applies "only to the operation of the emergency vehicle itself," not to the initiation or continuation of the pursuit. Kelly, 791 P.2d at 828; Thornton, 666 P.2d at 667-68 (quoted by Cavanaugh, 202 Wis. 2d at 318).

¶109 The theoretical and practical difficulties of making this distinction has been acknowledged in the years since Cavanaugh, Thornton, and Kelly.

41

¶110 The Kansas Supreme Court overruled Thornton in Robbins v. City of Wichita, 172 P.3d 1187, 1195 (Kan. 2007), "refusing to distinguish between the decision to pursue and continue the pursuit from the method of pursuing."

¶111 In Robbins, officers engaged in a high-speed chase that resulted in a fatal collision. The officers argued that their decision to pursue the suspect at high speed was immune because their decision on their speed was derived from their discretionary decision to pursue, not from their negligent operation of the vehicle.

¶112 The Robbins court reasoned that it was not feasible to distinguish between which actions derived from the decision to pursue and which actions derived from the operation of the vehicle, because "the act of driving involves both mental and physical components." Robbins, 172 P.3d at 1195.

¶113 Thus, the Robbins court concluded that officers could be liable for breaches of the duty of due care for decisions to pursue or continue pursuit of a fleeing driver.

¶114 Similarly, the Oklahoma Supreme Court overruled Kelly in State ex rel. Oklahoma Dep't of Public Safety v. Gurich, 238 P.3d 1 (Okla. 2010), citing Robbins for the proposition that "a decision to begin or discontinue a police pursuit is indistinguishable from the method of pursuing." The Gurich court similarly concluded that officers are liable for breaches of the duty of due care for both physical operation of a vehicle and the decision to pursue or continue pursuit.

42

¶115 Cavanaugh's distinction between the decision to pursue, which is immune, and the physical operation of the vehicle, which is not immune, has thus been rebuffed by other jurisdictions as unworkable.

¶116 Cavanaugh nevertheless retains vitality and is instructive in the instant case, as is the mandatory language of Wis. Stat. § 346.03(5) declaring that the exemptions or privileges "do not relieve such operator from the duty to drive or ride with due regard . . . ."

¶117 Cavanaugh teaches that an officer must still treat all persons and vehicles with "due regard under the circumstances," notwithstanding the discretionary decision of the officer to engage in a high-speed pursuit or respond to an emergency call. Cavanaugh instructs that the duties of the officer to operate the vehicle are not subsumed by an initial discretionary decision.

¶118 Even though the officer "may . . . proceed past a red or stop signal or stop sign," Wis. Stat. § 346.03(2)(b), that officer must still "slow[] down as may be necessary for safe operation," § 346.03(2)(b), "giv[e] both such visual signal and also an audible signal by means of a siren or exhaust whistle," § 346.03(3),[48] and maintain "the duty to drive or ride with due regard under the circumstances . . . ." § 346.03(5).

B

---

[48] See discussion infra, ¶¶125-130, on this requirement in Brown, 348 Wis. 2d 603.

¶119 We turn from <u>Cavanaugh</u>'s pursuit/physical operation distinction to the discretionary-ministerial distinction to determine whether the police officer's breach of the duty of due regard under Wis. Stat. § 346.03(5) subjects the officer in the present case to immunity or liability.

¶120 A key step in inquiring whether an act is discretionary or ministerial is to identify the law creating the duty to act.  "Where there is a written law or policy defining a duty, we naturally look to the language of the writing to evaluate whether the duty and its parameters are expressed so clearly and precisely, so as to eliminate the official's exercise of discretion."[49]

¶121 In the instant case, the plaintiff points to two sources of law that allegedly create the ministerial duty requiring the police officer to act with "due regard under the circumstances":  First, the statute governing the rules of the road applicable to an authorized emergency vehicle, Wis. Stat. § 346.03(5); and second, the internal procedures of the Racine Police Department.

¶122 The text of Wis. Stat. § 346.03(5) declares that operators of authorized emergency vehicles, despite their privilege or exemption from other requirements of the rules of the road, must continue to operate their vehicles with due regard under the circumstances for the safety of others.

---

[49] See <u>Pries</u>, 326 Wis. 2d 37, ¶26.

¶123 The internal procedures for the Racine Police Department echo the language of Wis. Stat. § 346.03(5), stating that "the exemptions granted above do not relieve department members from the duty to drive with due regard under the circumstances for the safety of all persons."  The internal police procedures list the considerations that a police officer must take into account to drive with "due regard":

a. The type, actions and speed of the vehicle being pursued;

b. The geographic area of pursuit and its population density;

c. The time of day and day of week;

d. The vehicular and pedestrian traffic present in area;

e. The road and weather conditions;

f. The officer's familiarity with the area of pursuit.[50]

¶124 Wisconsin Stat. § 346.03 and the internal Racine Police Department procedures create a ministerial duty.[51]

¶125 Our conclusion that the statute sets forth a ministerial duty is supported by our case law.  See Brown, 348 Wis. 2d 603; Cavanaugh 202 Wis. 2d 290.

¶126 In Brown, the court held that an officer breached a ministerial duty regarding the method by which an officer

---

[50] City of Racine Police Department, Policy and Procedure No. 812 (2006).

[51] See the discussion of a governmental entity's ministerial duty to create guidelines, ¶¶102-103, supra.

operated an emergency vehicle and consequently subjected himself to liability, even if the officer's operation of the vehicle occurred as part of his performance of some discretionary act that is otherwise immune.

¶127 In Brown, a volunteer fire truck driver was responding to an emergency and entered an intersection against a red light. An exemption to the general rules of the road granted by Wis. Stat. § 346.03(2)(b) states that an operator of an authorized emergency vehicle may "proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation."

¶128 The fire truck driver had his vehicle's lights on but no siren was activated. Under Wis. Stat. § 346.03(3), the exception allowing an operator of an authorized emergency vehicle to enter an intersection against a red stop signal applies only if both the visual signal and audible signal by means of a siren or exhaust whistle are engaged.[52]

---

[52] Wisconsin Stat. § 346.03(3) reads in full:

The exemption granted the operator of an authorized emergency vehicle by sub. (2)(a) applies only when the operator of the vehicle is giving visual signal by means of at least one flashing, oscillating or rotating red light except that the visual signal given by a police vehicle may be by means of a blue light and a red light which are flashing, oscillating or rotating, except as otherwise provided in sub. (4m). The exemptions granted by sub. (2)(b), (c) and (d) apply only when the operator of the emergency vehicle is giving both such visual signal and also an audible signal by means of a siren or exhaust whistle, except as otherwise provided in sub. (4) or (4m).

¶129 The Brown court held that the driver's failure to use a siren was a failure to perform a ministerial duty. Although the initial decision to initiate the emergency response and proceed through the red light was discretionary under Cavanaugh, the driver's activation of the siren was "directly govern[ed]" by the statute and was a nondiscretionary ministerial function on the part of the driver. Brown, 348 Wis. 2d 603, ¶53. Failure to perform a nondiscretionary ministerial function set forth in Wis. Stat. § 346.03(3) resulted in liability in Brown.

¶130 The Brown court did not address whether the "due regard" obligation imposed by Wis. Stat. § 346.03(5) could also support liability in that case.

¶131 The ministerial duty in the instant case is a duty to maintain a particular standard of care——namely a duty of "due regard under the circumstances." This duty is given additional clarification, but not precision, through the Racine internal police procedures detailing what due regard entails. As our case law has demonstrated, although not consistently, a duty need not dictate each precise undertaking that the government actor must implement in order to be ministerial.[53]

¶132 In Cavanaugh, for example, the statute established a duty on the part of the governmental entity to create guidelines but did not explain the exact method or means by which to enact those guidelines, i.e., it left them to the discretion of the

---

[53] See ¶¶48-59, supra.

47

entity.[54]   Nevertheless, in Cavanaugh, the court held that when the governmental entity fails to comply with the requirements of Wis. Stat. § 346.03, the immunity statute does not protect the governmental entity from liability.  Cavanaugh, 202 Wis. 2d at 300-01.

¶133 Using the discretionary-ministerial dichotomy to determine immunity and liability, we hold that the officer's acts in the instant case are outside the scope of the immunity statute and the officer is liable for negligence.

¶134 Today's holding is in keeping with sister state jurisdictions with statutes similar to Wisconsin's that view the operation of a vehicle as a paradigmatic ministerial act.[55]

---

[54] Wis. Stat. § 346.03(6).

[55] As Downs v. United States, 522 F.2d 990 (6th Cir. 1975) notes, in interpreting the Federal Tort Claims Act, operating an automobile is the archetypal nondiscretionary act, even though it still involves judgment on the part of the operator:

> It is not the mere exercise of judgment, however, which immunizes the United States from liability for the torts of its employees.  Driving an automobile was frequently cited in the congressional reports leading to the Act as an example of "non-discretionary" activity which would be outside the discretionary function exception. Driving an automobile involves judgment.  The failure to signal a turn, for example, may be said to represent an exercise of judgment, albeit a poor one.  Yet, the automobile accident caused by a federal employee while on the job is an archetypal claim which Congress sought to place in the courts.

Downs, 522 F.2d at 995 (citations omitted).  See also Schmitz v. City of Dubuque, 682 N.W.2d 70, 73 (Iowa 2004) (quoting Downs); Pile v. City of Brandenburg, 215 S.W.3d 36, 40 (Ky. 2006) ("The act of safely controlling a police cruiser is not a

48

These jurisdictions tend to hold that immunity does not attach to negligent operation on the part of an emergency vehicle operator.[56]

¶135 Consequently, we view our discretionary-ministerial jurisprudence as directing us to hold that immunity does not apply to the police officer's conduct in the instant case simply because she made the discretionary decision to respond to an emergency call.

V

¶136 Because we hold that no immunity exists for the officer in the instant case, we review the circuit court's decision to direct a verdict in favor of the officer.

¶137 A motion for a directed verdict challenges the sufficiency of the evidence. A circuit court may grant the

---

discretionary act, but rather a ministerial function."); Mumm v. Mornson, 708 N.W.2d 475, 491-92 (Minn. 2006) (officers were not entitled to immunity for decision to continue pursuit, because the officers' duty to discontinue pursuit was ministerial in compliance with department policies).

[56] See, e.g., Patrick v. Miresso, 848 N.E.2d 1083 (Ind. 2006) (holding that a claim that an emergency vehicle operator breached a similar "due regard" statute was not barred by immunity); Robbins, 172 P.3d 1187 (Kan. 2007); Mason v. Bitton, 534 P.2d 1360, 1365 (Wash. 1975) (holding that immunity cannot bar liability in a case alleging breach of due regard by an emergency vehicle because "[i]f this type of conduct were immune from liability, the exception would surely engulf the rule, if not totally destroy it"); Biscoe v. Arlington County, 734 F.2d 1352 (D.C. Cir. 1984) (applying District of Columbia law using similar "due regard" language to allow a suit for negligence against an emergency vehicle operator and governmental actor for failing to exercise "due regard" and holding that pursuit was a ministerial duty).

motion if the circuit "court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party." Wis. Stat. § 805.14(1).  When there is any credible evidence to support a jury's verdict, even though it is contradicted and the contradictory evidence appears stronger and more convincing, nevertheless the verdict must stand.[57]

¶138 Like the circuit court, an appellate court conducts a search of the record for facts to uphold the jury verdict.[58]  An appellate court should not overturn a circuit court's decision to dismiss for insufficient evidence unless the record reveals that the circuit court was "clearly wrong."[59]  A circuit court's decision to change the jury's answer is clearly wrong if the jury's verdict is supported by any credible evidence.[60]

---

[57] Marquez v. Mercedes-Benz USA, LLC, 2012 WI 57, ¶47, 341 Wis. 2d 119, 143, 815 N.W.2d 314, 326, decision clarified on denial of reconsideration, 2012 WI 74, 342 Wis. 2d 254, 823 N.W.2d 266, reconsideration denied, 2012 WI 106, 343 Wis. 2d 558, 820 N.W.2d 432.

[58] Marquez, 341 Wis. 2d 119, ¶48.

[59] Id., ¶49.

[60] Marquez, 341 Wis. 2d 119, ¶49.

¶139 The circuit court determined that a directed verdict in the present case was justified. The circuit court adhered to the negligence standard as set forth in Cavanaugh and concluded that "[the officer's] negligence could not have been causal, and on that basis, she should not be liable as determined by the jury."

¶140 The jury had before it evidence that there was an obstruction to the police officer's vision; that the police officer was familiar with the intersection; that the intersection was busy; that the police officer entered the intersection at 27 miles per hour; that the police officer was a block from her destination; that the officer saw another car turning right into the southbound lanes and had to avoid the car; that the officer never saw the plaintiff's car; and that the police officer could not have avoided the accident after entering the intersection.

¶141 The circuit court reasoned that any breach of duty of due regard after initiating the entry into the intersection could not have caused the accident, because any failure to keep a lookout after entering would not have prevented the accident.

---

"If there is any credible evidence . . . from which the jury could conclude that the . . . driver was negligent with respect to any of the items of negligence in regard to which they were instructed——lookout, management and control, or speed——the motion for directed verdict [is] properly denied and the jury's verdict must be sustained." Crowder v. Milwaukee & Suburban Transp. Corp., 39 Wis. 2d 499, 159 N.W.2d 723 (1968).

¶142 Yet the police officer's duty of due regard did not simply emerge once the police officer entered the intersection. The duty to keep a lookout existed before entry into the intersection.[61]

¶143 A jury could find that the police officer's conduct demonstrated a failure of lookout, a failure to reduce speed, and a failure of management and control. Viewing the credible evidence in the light most favorable to the plaintiff, we conclude that there is credible evidence to support a jury's finding that the officer's conduct constituted causal negligence.

¶144 The police officer argues that because she had the right of way under Wis. Stat. § 346.03(2), which authorizes the officer to enter the intersection against a red stop signal, the plaintiff could not have been only 50 percent causally negligent.

¶145 The police officer cites to Sabinasz v. Milwaukee & Suburban Transport Co., 71 Wis. 2d 218, 238 N.W.2d 99 (1976), for the proposition that the plaintiff's failure to yield to the officer's right of way bars a jury finding that the plaintiff is only 50 percent responsible. Yet the Sabinasz court noted that even when a driver has the right of way and can assume that drivers without the right of way will yield, "[T]his does not excuse the driver [with the right of way] from maintaining a

_____

[61] Leckwee v. Gibson, 90 Wis. 2d 275, 290-91, 280 N.W.2d 186 (1979).

proper lookout or relieve him of liability if the jury finds that he failed to do so." Sabinasz, 71 Wis. 2d at 223. This principle holds true even when the vehicle with the right of way is an authorized emergency vehicle and the other driver was also negligent and failed to yield. See Montalto, 272 Wis. 552.

¶146 The standard of review dictates our result. There was "credible evidence" that the officer was negligent and caused the injury. Therefore, the circuit court erred in directing a verdict in the instant case.

\* \* \* \*

¶147 We conclude that the immunity statute does not apply in the present case to the police officer's violation of the duty to operate the vehicle "with due regard under the circumstances." A contrary outcome would contravene Wis. Stat. § 893.80(4) and § 346.03(5), public policy, rules of statutory interpretation, and case law.

¶148 We further conclude that there was credible evidence to support the jury verdict of causal negligence on the part of the police officer.

¶149 For the reasons set forth, we reverse the judgment of the circuit court dismissing the action and remand the matter to the circuit court to reinstate the jury verdict.

*By the Court.*——The judgment of the circuit court is reversed and the cause is remanded.

¶150 ANNETTE KINGSLAND ZIEGLER, J. *(dissenting).* Emergency responders are permitted, to some extent, to violate the rules of the road when responding to an emergency, and for good reason. See Wis. Stat. § 346.03(2).[1] I recognize that this privilege is not limitless, see Wis. Stat. § 346.03(3),[2] and I further recognize that an emergency responder must exercise "due regard under the circumstances for the safety of all persons." See § 346.03(5).[3] Under the facts of this case, however, the

---

[1] Wisconsin Stat. § 346.03(2) provides:

The operator of an authorized emergency vehicle may:

(a) Stop, stand or park, irrespective of the provisions of this chapter;

(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(c) Exceed the speed limit;

(d) Disregard regulations governing direction of movement or turning in specified directions.

[2] Wisconsin Stat. § 346.03(3) provides:

The exemption granted the operator of an authorized emergency vehicle by sub. (2) (a) applies only when the operator of the vehicle is giving visual signal by means of at least one flashing, oscillating or rotating red light except that the visual signal given by a police vehicle may be by means of a blue light and a red light which are flashing, oscillating or rotating, except as otherwise provided in sub. (4m). The exemptions granted by sub. (2) (b), (c) and (d) apply only when the operator of the emergency vehicle is giving both such visual signal and also an audible signal by means of a siren or exhaust whistle, except as otherwise provided in sub. (4) or (4m).

[3] Wisconsin Stat. § 346.03(5) provides:

1

circuit court correctly concluded that Officer Matsen, as an emergency responder, complied with her statutory obligations and is entitled to immunity.

¶151 The majority opinion's reasoning leads it to err because it disregards the standard set by the legislature in Wis. Stat. § 346.03; departs from our jurisprudence in regard to ministerial duty and discretionary act; disregards the standard we set in Estate of Cavanaugh v. Andrade, 202 Wis. 2d 290, 550 N.W.2d 103 (1996); and ignores the circumstances under which Officer Matsen was acting. Accordingly, I respectfully dissent.

¶152 In the case at issue, Officer Matsen, acting as an emergency responder, had activated her lights and siren, thus complying with Wis. Stat. § 346.03(3). As she approached the intersection, Officer Matsen slowed her vehicle to 27 miles per hour, below the 30 miles per hour posted speed limit, thus complying with § 346.03(2)(b). While it is true that Legue and Officer Matsen were not visible to one another because a KFC blocked their view of each other, Officer Matsen had engaged full emergency response with her squad lights on and emergency siren sounding.

¶153 Legue was under an absolute obligation to give Officer Matsen the right of way. See Wis. Stat. § 346.19(1).[4] Legue had

---

The exemptions granted the operator of an authorized emergency vehicle by this section do not relieve such operator from the duty to drive or ride with due regard under the circumstances for the safety of all persons nor do they protect such operator from the consequences of his or her reckless disregard for the safety of others.

[4] Wisconsin Stat. § 346.19(1) provides in relevant part:

her radio on, her air conditioning on, and her windows closed. Legue did not see or hear Officer Matsen's vehicle. Legue entered the intersection traveling at 30 miles per hour and broadsided Officer Matsen's squad car. The jury found Legue and Officer Matsen equally negligent. The circuit court, however, concluded that Officer Matsen, as an emergency responder, was entitled to immunity as she was acting in a discretionary capacity with due regard under the circumstances. I agree.

¶154 The majority opinion fails to interpret Wis. Stat. § 346.03(5) and concludes that Officer Matsen, as an emergency responder, is not entitled to immunity because she was not acting with discretionary authority, but instead failed in her "ministerial duty" to act with "due regard under the circumstances." Majority op., ¶¶131-33. In so doing, the majority opinion ignores the plain meaning of § 346.03(5) by affording virtually no consideration to the legislature's coupling of "due regard" with "under the circumstances." The majority opinion confuses discretionary decision-making that the legislature afforded to emergency responders with common law negligence principles.

¶155 I conclude that Wis. Stat. § 346.03 sets the test we are to apply. The statute illuminates what is meant by "due regard" when an authorized emergency vehicle enters an intersection against a red light. It provides that an operator of an emergency vehicle can proceed past a red light if it

----

Upon the approach of any authorized emergency vehicle giving audible signal by siren the operator of a vehicle shall yield the right-of-way . . . .

3

"slow[s] down as may be necessary for safe operation" and if it gives a "visual signal by means of at least one flashing, oscillating or rotating red light except that the visual signal given by a police vehicle may be by means of a blue light and a red light which are flashing, oscillating or rotating, . . . and also an audible signal by means of a siren or exhaust whistle." Wis. Stat. § 346.03(2)(b) and (3). These requirements inform what regard is due.

¶156 Although the case at issue involved an officer traveling below the speed limit with her lights and siren engaged, entering an intersection against a red signal, the circumstances that can attend responding to an emergency are incredibly diverse. For example the area through which the emergency responder passes and the time of day are part of the circumstances of an emergency response, e.g., is the emergency responder proceeding through a school district with children present or is he or she proceeding through a rural area at two o'clock in the morning? The type of emergency is also part of the circumstances, e.g., is the call for help a request for help for a feared heart attack or a call to stop a vehicle involved in a traffic violation?

¶157 "Due regard under the circumstances for the safety of all persons" is not fully described with particularity, nor could it be, because the circumstances will generally require the exercise of judgment by the emergency responder in ways that are particular to the circumstance with which the emergency responder is confronted. When the circumstances require such

4

an exercise of judgment, it is the sine qua non of a discretionary decision.

¶158 Wisconsin Stat. § 346.03(6) also shows that exercising "due regard under the circumstances" often will require a judgment call. This section requires law enforcement agencies to provide written guidelines for officers to assist in their response to an emergency. Those guidelines are to consider, "road conditions, density of population, severity of crime and necessity of pursuit by vehicle." § 346.03(6).

¶159 Of course, we expect emergency responders to use discretion under the circumstances to permit them to respond safely and promptly. Of course, we contemplate that they may not follow the rules of the road when so responding. In the mind of the responder and in the legislature's own language, the response will be balanced and measured in that the responder must use "due regard under the circumstances." This balancing generally requires judgment calls that vary circumstance by circumstance. Such a balancing of continuingly changing factors in an emergency response then is not "absolute, certain and imperative" decision-making as the legislature would have set out if a ministerial duty were fully described.

¶160 To explain further, under our precedent, discretionary and ministerial duties are very different. Ministerial duties are "'absolute, certain and imperative,' involving the 'performance of a specific task' that the law imposes and defines the 'time, mode and occasion for its performance with such certainty that nothing remains for judgment or

5

discretion.'" <u>Brown v. Acuity</u>, 2013 WI 60, ¶43, 348 Wis. 2d 603, 833 N.W.2d 96 (quoting <u>Lister v. Board of Regents of University Wisconsin System</u>, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976)).

¶161 A public officer, such as an emergency responder, is immune from suit for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions. <u>Brown</u>, 348 Wis. 2d 603, ¶41 (quoting Wis. Stat. § 893.80(4)). Acts that require the exercise of judgment are "discretionary" under the law. <u>Lister</u>, 72 Wis. 2d 282. A public officer discharging a "ministerial duty," by contrast, is not entitled to immunity. <u>Kimps v. Hill</u>, 200 Wis. 2d 1, 10, 546 N.W.2d 151 (1996).[5]

¶162 As this court has consistently stated, "[a] public officer's duty is ministerial only when it is 'absolute, certain and imperative,' involving the 'performance of a specific task' that the law imposes and defines the 'time, mode and occasion for its performance with such certainty that nothing remains for

---

[5] While the majority opinion criticizes the distinction between "discretionary" acts, and "ministerial" duties, <u>see</u> majority op. ¶¶48-56, it nonetheless remains the law in Wisconsin. <u>See</u> <u>Brown v. Acuity</u>, 2013 WI 60, ¶¶42-43, 348 Wis. 2d 603, 833 N.W.2d 96.

judgment or discretion.'" Brown, 348 Wis. 2d 603, ¶43 (quoting Lister, 72 Wis. 2d at 301).[6]

¶163 The majority opinion, however, departs from these longstanding principles. The majority fails to address how Officer Matsen's duty of due regard under the circumstances was "'absolute, certain and imperative,'" such that she needed to perform only a "'a specific task'" in order to meet her obligation. Id. (quoting Lister, 72 Wis. 2d at 301). Further, the majority does not explain how Officer Matsen's duty to exercise "due regard under the circumstances" in the case at issue imposed or defined the "'time, mode and occasion'" for the performance of any such task "'with such certainty that nothing remains for judgment or discretion.'" Id. (quoting Lister, 72 Wis. 2d at 301). Instead, the majority opinion concludes that an emergency responder is under a ministerial duty not to be involved in an accident. See majority op., ¶¶142-43. If an accident occurs, under the majority's standard, immunity is seemingly precluded.

---

[6] The majority opinion claims that some cases, specifically Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693, have used a less stringent statement of the ministerial duty standard. See majority op., ¶49. This assertion, however, is incorrect. See Willow Creek, 235 Wis. 2d 409, ¶27 (stating that "[a] ministerial act, in contrast to an immune discretionary act, involves a duty that 'is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion'").

7

¶164 Additionally, the majority opinion's analysis is inconsistent with this court's prior decision in Estate of Cavanaugh v. Andrade, 202 Wis. 2d 290, 550 N.W.2d 103 (1996). In Cavanaugh we concluded that Wis. Stat. "§ 346.03(5) does not preclude the defense of immunity for the discretionary acts of initiating or continuing a high-speed pursuit." Id. at 317. In so doing, we distinguished between a discretionary decision to pursue a suspect, and a ministerial obligation to "physically operate" a vehicle with "due regard under the circumstances for the safety of all persons." Id. at 316-17. We also pointed out that a determination that the officer was negligent did not preclude the conclusion that he or she had acted with "due regard under the circumstances" and thereby was immune from liability. Id. at 319.[7]

¶165 In Cavanaugh the officer initiated and continued a high speed pursuit through a residential neighborhood. Id. at 296. The pursuit proceeded through solid red traffic signals at between 60 and 80 miles per hour, despite the fact that the suspect's illegal conduct merely involved a moving violation. Id. We nonetheless concluded that the officer was entitled to immunity, because the decision to engage in such a pursuit was discretionary and not ministerial. Id. at 316. We noted that "[i]nherent in the decision to pursue is the decision to speed."

---

[7] In Estate of Cavanaugh v. Andrade, 202 Wis. 2d 290, 550 N.W.2d 103 (1996), the jury found that the officer failed to maintain a proper lookout and this failure was causal in regard to Cavanaugh's injuries. Id. at 319. In the case before us, Officer Matsen was found by the jury to have failed to maintain a proper lookout.

8

Id. The court applied the "due regard under the circumstances" standard and stated that "an officer may be negligent pursuant to [Wis. Stat.] § 346.03(5) for failing to physically operate his or her vehicle with due regard for the safety of others." Id. at 317. The court, however, concluded that the officer's running of red lights, at 60 to 80 mile per hour, did not violate the "due regard under the circumstances" standard, and concluded that the officer was immune from liability.

¶166 It is difficult to reconcile the precedent of Cavanaugh with the majority opinion today. As in Cavanaugh, Officer Matsen was operating her vehicle in an emergency response. In Cavanaugh, the officer ran several red lights at between 60 and 80 miles per hour. By contrast, Officer Matsen entered an intersection against a red traffic signal, but did so at only 27 miles per hour. In Cavanaugh, the officer was acting in an effort to issue a traffic ticket. In the case at issue, Officer Matsen was responding to an emergency dispatch calling her to the scene of an accident.

¶167 As with Cavanaugh and that officer's decision to pursue, Officer Matsen exercised her judgment in deciding to proceed through the intersection, in response to an emergency. As with Cavanaugh, inherent in Officer Matsen's judgment is the exercise of discretion in deciding whether to proceed through the intersection with its risk of danger from cross-traffic. As with Cavanaugh, Officer Matsen did not maintain proper lookout.

¶168 Stated differently, the case at issue is controlled by Cavanaugh. If the officer in Cavanaugh was immune for his

9

discretionary decision to run red lights at 60 to 80 miles per hour in order to chase a traffic offender, Officer Matsen also is immune for her discretionary decision to enter an intersection against a red signal at 27 miles per hour in order to respond to an emergency dispatch calling her to the scene of an accident.

¶169 The majority opinion dutifully recites the standard articulated in Cavanaugh but does not apply it, and instead opines that Cavanaugh is merely "instructive." Majority op., ¶¶100-16. The majority neither overrules nor reverses Cavanaugh, but it seriously undermines its value as precedent.[8]

¶170 Under the majority's analysis, I am concerned whether a plaintiff who is involved in an automobile accident with an emergency responder need plead only that the responder failed to exercise "due regard" in order to automatically defeat a claim of immunity. Such a principle is clearly at odds with one of the primary justifications for governmental immunity: "[t]he danger of influencing public officers in the performance of their functions by the threat of lawsuit." Kimps, 200 Wis. 2d 1, 9. It is also at odds with the plain meaning of Wis. Stat. § 346.03.

¶171 For the foregoing reasons, I respectfully dissent.

---

[8] The only real difference between the two cases is that, in the case at issue, the officer himself was involved in the accident, while in Cavanaugh it was the suspect who struck another vehicle. This difference aptly illustrates how the majority's holding really works: officers are now under a ministerial duty not to be involved in traffic accidents.

10

¶172 I am authorized to state that Justices ANN WALSH BRADLEY and PATIENCE DRAKE ROGGENSACK join this dissent.